[No. 2,576.]

MOSES ANDREWS *v.* J. D. PRATT, W. H. KINDER, WM. VAN VACTOR, AND O. W. HOLLENBECK.

BOARDS OF SUPERVISORS ARE GUARDIANS OF COUNTY PROPERTY.— Boards of Supervisors are the guardians of the property interests of their respective counties, and in that relation occupy a position of trust, and are bound to the same measure of good faith towards the county which is required of an ordinary trustee towards his *cestui que trust*, or an agent towards his principal.

PAY OF A SUPERVISOR.—A Supervisor is not entitled to any remuneration for services rendered the county as a Supervisor, except his per diem and mileage, as fixed by law.

IDEM.—If a Board of Supervisors sell the stock owned by the county in a railroad corporation, in pursuance of a law authorizing such Board to do so, its individual members are not entitled to any extra pay for the services thus rendered.

ENJOINING PAYMENT OF COUNTY WARRANTS.—A Court of equity, on the complaint of a taxpayer, will enjoin the payment of and cancel county warrants illegally drawn on the Treasurer by order of the Board of Supervisors.

CERTIORARI TO A BOARD OF SUPERVISORS.—Certiorari will not lie to set aside the proceedings of a Board of Supervisors, in allowing an illegal claim against the county.

PARTIES DEFENDANT IN EQUITY.—Where several persons have been jointly concerned in a series of fraudulent acts, they may be united as defendants in a suit to annul the fraudulent acts, although the gains they realize by such acts are several.

APPEAL from the District Court of the Fourteenth Judicial District, County of Placer.

The plaintiff was a taxpayer in the County of Placer. The plaintiff demurred to defendants' answer and the demurrer was sustained. The Court below gave judgment, directing the warrants to be brought into Court and canceled,

and enjoining the Treasurer from paying them. The defendants appealed.

The other facts are stated in the opinion.

C. A. Tuttle, for Appellants.

A Board of Supervisors is a legislative body possessing quasi-judicial powers, so far as the allowance of accounts is concerned; and their determination upon the question of the allowance of an account against the county is final, so long as they are acting within their jurisdiction, and cannot be attacked collaterally. (El Dorado County v. Elstner, 18 Cal. 147; Robinson v. Board of Supervisors, 16 Cal. 210; People v. El Dorado Co., 8 Cal. 59.)

The defendant's accounts were legally chargeable against the county. The Act of 1863, authorizing Placer County to issue its bonds, imposes many special duties upon its Supervisors. They were to hold a special meeting (Sec. 1); to cause notice to be published (Sec. 2); to meet to count the votes (Sec. 3); to take and subscribe to the capital stock (Sec. 4). In short, nearly every section of the Act imposes new and special and responsible duties on the Board. Its Chairman also had special duties imposed on him. Secs. 5, 7, etc.) The duties imposed upon the Supervisors by this Act are all new, and do not come under the general Act of 1855. A committee of one or more of their number might vote the stock. (Sec. 17.) In subscribing for the stock, and in voting it, the Supervisors performed special duties, which could not be performed while in session at the county seat, and were necessarily compelled to travel and expend money. (Sec. 4.) The Supervisors, to subscribe, had to travel to Sacramento. In delivering the bonds the same thing would occur. The Legislature, aware that much special labor was imposed by the Act on county officers, in the sixteenth section (Laws 1863, p. 149), declared that "said Commissioners, and all other officers herein specified,

for the performance of their duties under the provisions of this Act shall," * * * "when the fees or salary is not fixed by law for the services herein required, be allowed by the Board of Supervisors a reasonable compensation therefor, to be paid by said county as other fees or salaries are paid." It is evident that the Legislature knew they were imposing upon county officers' duties, for which no "fees or salary" were "fixed by law." If any officers performed such duties under the Act it was Supervisors. The Auditor, who is made a Commissioner in the seventh section, does little more than keep the accounts, and he receives a salary for that purpose. (Laws 1861, p. 527.) The Supervisors by the Act (Sec. 17) are authorized to sell the stock, upon submitting the proposition to a vote. This sale of the stock must have been one of the things referred to in section sixteen. To effect such sale would require negotiation, travel, a careful knowledge of the market, and shrewdness and care in making a bargain. It was, moreover, imposing a heavy responsibility. These things could not be performed while sitting at the county seat, in the capacity of a Board. Work must be done by the members outside. The Act (Sec 16) does not restrict this compensation to the Commissioners alone. It says: "The said Commissioners, and all other officers herein specified."

In 1866 (Laws 1865–6, p. 628) a supplementary Act was passed, conferring additional powers on the Supervisors as to the sale of the stock, but leaving section sixteen of the Act of 1863 untouched. The old section (seventeen) had conferred the power to sell upon the Board of Supervisors. The supplementary Act of 1866 leaves out the word "Board," and confers the authority to sell upon the Supervisors. They are not required to act in their capacity as a Board in making the sale—that is, in making the bargain. This was doubtless done to enable them to travel to San Francisco or any other place and close a bargain. In 1870 this power

to sell was enlarged by removing all restrictions. (Laws 1869–70, p. 866.) This Act again provides (section one) that the Supervisors of the county, etc., may sell the stock upon such terms and conditions as shall be deemed expedient by the "Board of Supervisors." This appears to mean that the Board may, while in session, declare on what terms the stock shall be sold, and then the Supervisors may find purchasers and make a contract on those terms. In Placer County there are but three Supervisors. (Laws 1863–4, p. 291.) These Supervisors receive a per diem while sitting as members of the Board, and mileage in going to the county seat. (Hittell, Art. 6987.) The section provides that "no further allowance whatever shall be made for services as a member of the Board." Even this section does not prohibit a Supervisor from receiving pay for special services performed while not acting as a member of the Board. The Railroad Act of 1863 (section sixteen, *supra,*) and the Acts supplementary thereto, if they conflict with this in any respect, are later in time, and must prevail. At all events, the Legislature thought that in the Act of 1863 they were imposing special duties on the Supervisors. The Board of Supervisors have examined this matter, and decided that each member has performed duties under the Act for which "the fees or salary is not fixed by law," and have decided what is a "reasonable compensation therefor," and have paid it "as other fees and salaries are paid." This is all within the jurisdiction of the Board. It was a matter of which no other tribunal has cognizance. It was a matter of evidence whether each Supervisor had performed such service, and the District Court could not afterwards review its decision on the matter. It was a matter of evidence before the Board, whether the services were worth fifteen hundred dollars, and no other tribunal can, in a collateral proceeding, review this evidence. The Constitution (Art. XI, Sec. 5,) declares that the "Legislature shall have power to provide for the election of a Board

of Supervisors in each county, and these Supervisors shall jointly and individually perform such duties as may be prescribed by law." This section is a limitation on the third Article of the Constitution. (*People* v. *El Dorado Co.*, 8 Cal. 61.) The District Court, as a Court of equity, can no more review the action of the Board of Supervisors on judicial questions than it can review the judgments of Justices of the Peace or of the County Courts, on matters within their respective jurisdictions. It was within the jurisdiction of the Board of Supervisors to examine and inquire whether, in the sale of the railroad stock, the Supervisors had, under the Act of 1870 (Laws 1870, p. 867), performed any services for which no "fees or salary" were "fixed by law," and having determined that they had, it was then in the jurisdiction of said Board to determine what was a "reasonable compensation" therefor.

It will probably be alleged that as the Board of Supervisors allowed each account, there was some fraud about it. The complaint does not state in what the alleged fraud consisted. The Board, by its Constitution, is the only tribunal to allow accounts chargeable against the county. It must allow the per diem of its members and their mileage. To do this it must pass on questions of fact. These questions of fact cannot be reviewed by other Courts.

*W. C. Norton* and *W. H. Bullock*, for Respondent.

The fees of the Supervisors of Placer County are fixed by law (Stats. 1869–70, p. 175,) at six dollars per day for each day necessarily employed, and a mileage of twenty cents per mile in traveling to and from their residences to the county seat.

Prior to the Act of 1870 the Supervisors of Placer County were allowed a per diem of eight dollars, and the law pro-

vided that the aggregate of per diem during any one year should not exceed five hundred dollars per each member of the Board.    (Hittell, Art. 6987.)

The appellants claim that the County of Placer became indebted to them in the sum of fifteen hundred dollars each for services rendered the county, as set forth in their answer, by virtue of the sixteenth section of the Act of 1863, referred to before.    (Stats. 1863, p. 149.)    Section sixteen reads as follows:

"SEC. 16.    The said Commissioners and all other officers herein specified for the performance of their duties under the provisions of this Act, shall, in all things herein required of them, be subject to all the liabilities and penalties to which they are subject, or the performance of any other of the duties of their respective offices, and they shall, where the fee or salary is not fixed by law for the services herein required, be allowed by the Board of Supervisors a reasonable compensation therefor, to be paid by said county as other fees or salaries are paid; and the Board of Supervisors may, and they are fully authorized so to do, require of each of said Commissioners such bonds and security for the performance of their duties herein required of them as they, the said Board of Supervisors, may deem proper; *provided,* however, that the penal sums of such bonds to each of such Commissioners shall not exceed eight thousand dollars.    The said Commissioners shall, when so required, execute the said bonds in the same manner as other official bonds are executed, and to be approved by the Board of Supervisors, and filed in the office of the County Clerk."

The above section does not apply to the Board of Supervisors, because their fees were already fixed by law; they did not constitute the Board of Commissioners mentioned in the Act.    The Board of Commissioners consisted of the

Chairman of the Board of Supervisors, the County Auditor, and the County Treasurer.

The Act of 1869–70 did not provide for any compensation to the Supervisors for selling the railroad stock belonging to the county.

The Act of 1869–70 imposed no new duties upon the Board of Supervisors. By the statute of 1855 their powers and duties in relation to the property of the county were defined. (Hittell, Art. 6978, Sec. 9.)

It is asserted by counsel for appellants, that a Board of Supervisors are a quasi-judicial body.

Now, it is a fundamental rule in the administration of justice, that a person cannot be a Judge in a cause wherein he is interested. *Nemo sibi esse judex vel suis jus dicere debet.* (Broom's Legal Maxims, p. 84.)

Where a Judge is interested in the result of a cause, he cannot, either personally or by deputy, sit in judgment upon it; and it has been recently held that the presence of one interested magistrate will render the Court improperly constituted, and vitiate the proceedings; it being no answer to the objection, that there was a majority in favor of the decision, without reckoning the vote of the interested party. (*Regina* v. *Justices of Hertfordshire,* 6 Q. B. 753; 60 E. C. L. R.; 12 M. & W. 734.)

An award made by an interested party is invalid. (Watson on Arbitrators, 3d ed., p. 85.)

It is true, the Supervisors allow their own account as to per diem and mileage, but even their account must be under oath. They do not fix the amount of the claim, because it is already fixed by law.


By the Court, NILES, J.:

This suit was brought to procure the cancellation of three warrants for the sum of fifteen hundred dollars each, drawn

in favor of the defendants Pratt, Van Vactor, and Kinder, severally, against the General Fund of the County of Placer.

From the complaint and answer, we adduce the following facts:

The plaintiff was a resident of the County of Placer. The defendants Pratt, Van Vactor, and Kinder, constituted the Board of Supervisors, and the defendant Hollenbeck was the County Treasurer. The county had been the owner of two thousand five hundred shares of the stock of the Central Pacific Railroad Company. By an Act of the Legislature of April 4th, 1870, the Supervisors were authorized "to sell and dispose of any or all of the stock held or owned by said county in the Central Pacific Railroad Company, upon such terms and conditions as shall to said Board of Supervisors, to be declared by a unanimous vote thereof, be deemed expedient, and for the best interests of said county." Pursuant to this authority, the Supervisors negotiated a sale of the stock to D. O. Mills & Co., for the sum of two hundred and fifty thousand dollars, and by resolution authorized the Chairman, Van Vactor, to proceed to Sacramento and transfer the stock to the purchasers, and the sale was thus completed. Van Vactor presented the following written claim against the county:

"County of Placer to Wm. Van Vactor, Dr.:

"For services in negotiating and selling stock of Placer County in the Central Pacific Railroad, and expenses, and attorney's fees, fifteen hundred dollars. Auburn, May 6th, 1870."

Each of the other Supervisors presented a similar claim for the same amount. These claims were allowed at a regular meeting of the Board, and the warrants drawn, which the plaintiff seeks to have canceled.

1. The Act of April 4th, 1870, authorizing the Board of Supervisors to dispose of the railroad stock of the county,

created no new office and imposed no new duties upon the Board.   It placed some restrictions upon their general powers to sell, and provided the manner of its exercise in this particular transaction.   But the sale in pursuance of the statute was the act of the Board as such, and in the line of its ordinary official duties.

The Act to regulate fees of office, etc. (Stats. 1869–70, p. 175), fixes the compensation of the Supervisors of the several counties.   By section ninety-one of the Act it is provided that "officers whose fees and compensation are set forth in this Act shall not be entitled to charge or receive any fees, compensation, or salary not herein enumerated and provided for."   And by section ninety-four that "no other fees shall be charged than those specifically set forth herein, nor shall any fees be charged for any other services than those mentioned in this Act."

There can be no doubt that the allowance of these demands by the Board was not only unwarranted by the statute, but within its positive prohibitions.

In this view the Act would have been illegal if it had been an allowance of extra remuneration to any salaried or feed officer.

But the fact that the several claims were allowed in favor of individual members of the Board brings the case within the reason of a rule of more general application. The Board of Supervisors are constituted by law guardians of the property interests of the county and are given the entire control of its revenues.   They occupy a position of trust, and in that relation are bound to the same measures of good faith towards the county which is required of an ordinary trustee towards his *cestui que trust*, or an agent towards his principal.   It is a prevailing rule that "the law will not permit one who acts in a fiduciary capacity to deal with himself in his individual capacity."   The rule has been carried so far that the Courts have refused to inquire

into the facts of a particular case to ascertain whether the trustee acted fairly or unfairly towards his *cestui que trust.* The mere fact of the existence of this relationship has been held to avoid the transaction. (*President, etc., of San Diego* v. *San Diego and Los Angeles Railroad Company,* ante, 106; *Aberdeen Railroad Company* v. *Blakie,* 1 McQueen's R., 461.)

The present case does not call for the application of a rule so strict as this. We know of no case in which the attempt by an agent to appropriate to his own use the money of his principal under the pretense of payment for services for which he had already received full compensation has been upheld by any Court.

The proceedings of the Board bore the taint of more than the mere constructive fraud implied from the relation of the parties. We think their action was indefensible and wholly void.

2. It is contended by the appellants, that conceding the invalidity of the acts of the Board, the remedy, if any existed, was by a writ of certiorari. We have held that the writ of certiorari will lie against an inferior Board or tribunal only in a case in which it has exceeded its jurisdiction, and not in the case of a mere irregularity intervening in the exercise of an admitted jurisdiction. (*Central Pacific Railroad* v. *The Board of Equalization of Placer Co.,* 43 Cal., 365.) The allowance of claims against the county is peculiarly within the province of the Board of Supervisors. No excess of jurisdiction is claimed in the present case. The plaintiff does not complain that the Board, acting in a judicial capacity, lacked power over the subject matter of the demands, but that the power was fraudulently exercised for the private gain of the Judges themselves, and to his injury.

It is evident that the writ of certiorari would afford no remedy. The order of allowance stands as the judgment of a Court of competent jurisdiction, which may at all times

be impeached collaterally for fraud.    We think a fraudulent combination upon the part of the defendants is apparent from the facts set forth in their answer, and that the plaintiff's demurrer was properly sustained.

3. The complaint, though somewhat inartificially drawn, contained a sufficient statement of the cause of action to prevail against a general demurrer.

The defendant's objection, that there was a misjoinder of parties and of causes of action in the union of Pratt, Van Vactor, and Kinder, as defendants, was not well taken.    It is averred that these defendants conspired together for the purpose of defrauding the county; that in pursuance of a concerted plan each presented a fraudulent claim against the county for pretended services; that acting as a Board of Supervisors they allowed these several fraudulent claims, and ordered the warrants to be drawn upon the County Treasury, which the plaintiff, by these proceedings, seeks to have canceled.

There is no doubt that where a bill is filed against several defendants, for several and distinct causes, having no relation to or dependence upon each other, a demurrer for this reason will be sustained.    But we do not find it questioned that where several persons have been jointly concerned in a series of fraudulent transactions they may be united as defendants in a suit to annul the fraudulent acts.    The gist of the action is fraud.    The defendants have "one common interest among them all, centering in the point in issue in this cause," and which is not severed by a mere division of the gains.    (*Ward* v. *The Duke of Northumberland*, 2 Ans. 469; *Fellows* v. *Fellows*, 4 Cowen, 682; *Brinkerhoff* v. *Brown*, 6 Johns. Ch. 139.)

We think that the judgment of the Court below should be affirmed; and it is so ordered.