[No. 6,720.—Department Two.]

MARY C. O'NEIL, ADMINISTRATRIX, ETC. *v.* PETER DONAHUE.

CONVERSION—FINDINGS—NEW TRIAL—CONFLICT OF EVIDENCE.—In an action for the conversion of stock of a railroad company, *held,* that the findings are sufficient to support the judgment, and are sustained by the evidence.

COST BILL—NOTICE.—Under § 1033, Code of Civil Procedure, as it formerly stood, a cost bill served and filed more than five days after the prevailing party had served upon the adverse party notice of the decision was too late.

APPEAL from a judgment, and order denying a new trial, and an order denying defendant's motion to strike out the plaintiff's cost bill, in the Nineteenth District Court, City and County of San Francisco. WHEELER, J.

*Lloyd & Newlands,* for Appellant.

The bill of costs should have been stricken out. The case was decided October 11th, 1878. The bill of costs was filed January 13th, 1879. It was never served on defendant. As-

suming that plaintiff had until five days after notice of the decision of the case, still it was too late, as she served a notice of decision on defendant October 11th, 1878, and defendant served on plaintiff and filed his notice of intention to move for a new trial October 21st, 1878.

*George W. Tyler*, for Respondent.

It is not claimed that the defendant had given notice of the decision to plaintiff five days before the filing the cost bill. It was, therefore, filed in time.

Thornton, J.:

This action was brought to recover damages for the conversion of forty-five shares of the capital stock of the Omnibus Railroad Company. The cause was tried by the Court, and judgment passed for plaintiff. Defendant moved for a new trial, which was denied ; and this appeal is from the judgment and order denying a new trial.

The Court below rendered its decision as follows:

" This cause was tried by the Court, sitting without a jury, and the Court finds as follows :

" 1. James O'Neil died September 5th, 1876, and plaintiff was appointed and duly qualified as administratrix on the 17th day of October, 1876, and has since continued to act as such.

" 2. O'Neil, for ten years prior to his death, had been the confidential clerk of defendant, and until his death, collected large sums of money and made large disbursements for him, and had the custody and control of his private papers, was defendant's agent in all his business affairs, and was implicitly trusted in all respects.

" 3. Defendant, for ten years prior to O'Neil's death, was President of the Omnibus Railroad Company, a corporation having its office in San Francisco, and was a large stockholder therein. Said O'Neil was secretary of said corporation during that time, as well as confidential clerk of defendant.

" 4. Said defendant, during said period, at various times bought and sold a great many shares of said stock; said O'Neil acting as his agent in said transactions ; and many of said shares

were transferred to said O'Neil on the books of said company, and afterwards to defendant—in all, several hundred shares.

"5. The by-laws of said corporation provide, that each director must be the *bona fide* owner of fifty shares of stock, as his own in his own right.

"6. In 1866, said Donahue gave to said O'Neil, and caused to be transferred to him on the books of said corporation, fifty shares of stock, with intent to qualify said O'Neil to act as a director in said corporation. Said stock was afterwards, as occasion required, transferred with other stock belonging to defendant as security for money loaned to defendant, said O'Neil acting as agent in said transaction. The same was again conveyed to said O'Neil; and the piece of forty-four shares, hereinafter mentioned, constitutes a part of said stock. There was no agreement that said stock would be conveyed back to defendant; but said O'Neil knew the purpose of such transfer, and also that said Donahue, who was the owner of much stock in many corporations, was in the habit of transferring stock to various persons to enable such persons to act as directors in such corporations, and that such persons were required, after the stock was issued to them, to assign the same in blank, and deliver the same to Donahue; and such was the unexpressed expectation of both parties in the said transfer to O'Neil.

"7. Said O'Neil, as clerk and agent of defendant, had the custody of the safe containing the private papers of defendant; and as secretary of the Omnibus Railroad Company, had custody of the safe of said corporation. Said Donahue had no access to either of said safes except by the aid of said O'Neil.

"8. Said O'Neil died suddenly, without any premonitory sickness. After his death, there was found in the private safe of defendant a portfolio or wallet, in which the defendant kept his private papers, such as notes and certificates of stock, and in this was a certificate for fifty shares of stock in the Omnibus Railroad Company, which on the books of said corporation stood in the name of O'Neil, indorsed on which certificate was a blank assignment, signed by said O'Neil. In said safe was a separate package of papers belonging to said O'Neil, but containing no stock of said corporation. In the safe of the corporation there

was found a certificate for forty-four shares of stock in the same corporation, issued to said James O'Neil, and indorsed by him in the manner above stated as to the certificate in the private safe, and placed in an envelope, across which was written the name of the defendant.

"9. Said forty-four shares, given to said O'Neil, as before stated, had stood in his name since 1868, and in consequence, said O'Neil had acted as a director at request of defendant. That said indorsement was made in consequence of the expectation of Donahue that it should be given back, but said certificate was never delivered to said defendant, unless the above facts constitute a delivery. After said indorsement, said O'Neil continued to exercise all the rights of a stockholder in said corporation, with the knowledge of said Donahue, by virtue of said stock standing on the books of the corporation in his name, acting as a director, drawing dividends, and receipting on the books of the company in his own name, as the owner of said stock. Said O'Neil also drew the dividends of defendant in said corporation, and from many other corporations in which defendant was a stockholder, receipting for the same as agent.

"10. Inferentially, from the above facts, the Court finds that defendant gave said stock to O'Neil, intending that the same should vest absolutely in said O'Neil, to qualify him to be a director, believing, however, that said O'Neil would return the same when requested. That the indorsement was made to enable Donahue to obtain said stock in case of accident, but the same was never actually returned or given back to defendant by O'Neil.

"11. Said stock was the property of said O'Neil at the time of his death.

"12. Plaintiff made due demand of defendant for said stock on the 24th day of April, A. D. 1877, which said demand was refused.

"13. Said defendant converted said stock to his own use on the 24th day of April, 1877.

"14. The value of said stock at the time of said conversion was $1,100. As matter of law, the Court finds that plaintiff is entitled to judgment against said defendant for the sum of $1,100, with legal interest from the 24th day of April, A. D.

1877, as damages for the conversion of stock, with her costs. So ordered."

It is contended by the appellant (defendant below), that, upon the findings, the judgment should be reversed, and judgment ordered for defendant.

We have examined the findings carefully, and are of opinion that they support the judgment. The facts found showed that the title to the stock vested in the intestate of plaintiff, and that this title never passed out of him; that plaintiff's intestate owned the shares at his death, and they passed to the plaintiff afterwards as his administratrix, as part of his estate.

It is further contended, that the evidence is insufficient to sustain the decision; that the evidence shows that the stock was given to the defendant by plaintiff's intestate, and that the gift was perfected by delivery. The decision of this question turned upon matters of fact, peculiarly proper for the Court below to decide. The Court found that the stock in question was never given to Donahue as urged, and we cannot disturb such finding if there is any evidence to support it. We have examined the testimony as set forth in the transcript, and find that there is evidence to support this and the other findings of fact.

Taking the view most favorable to the defendant, the evidence is conflicting as to the gift back to Donahue; and under such circumstances, the finding, according to the long-settled rule of this Court, will not be disturbed. We will add here, that the evidence as to the gift by defendant to O'Neil is ample and conclusive.

The defendant moved the Court to strike out and disallow plaintiff's memorandum of costs and disbursements, on the ground that it was never served on defendant, and that it was not filed within the time allowed by law. He also moved to retax the memorandum of costs, and each and every item of it, on the ground that the items of cost were excessive, unauthorized by law, and had not been necessarily incurred in the action.

This motion (for there was but one) was denied, and from the order denying it defendant appealed.

It is shown by the bill of exceptions, that, on the hearing of

this motion, it was made to appear that the cause was decided by the Court on the 11th day of October, 1878; that, on the same day, plaintiff's attorney gave notice of the decision of the Court to the defendant, which notice, served on the day just mentioned, was filed in court on the same day; that on the 21st day of October, defendant duly gave notice to plaintiff of his intention to move for a new trial.

At the time of the occurrence of the foregoing events, it was required by § 1033 of the Code of Civil Procedure, that "the party in whose favor judgment is rendered, and who claims his costs, must deliver to the clerk, and serve upon the adverse party, within five days after the verdict or notice of the decision of the Court or referee—or, if the entry of the judgment or the verdict or decision be stayed, then before such entry is made —a memorandum of the items of his costs and necessary disbursements in the action or proceeding, which memorandum must be verified," etc.

As we have stated, the cause was tried by the Court, and the decision was in favor of plaintiff. The defendant gave no notice of such decision to the plaintiff, but the plaintiff did give such notice to the defendant, and that on the day that such decision was made. This notice was no doubt given by plaintiff to impose on defendant the obligation of giving notice of his intention to move for a new trial under § 659 of the Code of Civil Procedure, and within the time prescribed therein, should he intend to do so. The object of the provisions of § 1033, as to the costs, was to give the successful party who claimed such costs five days after he had knowledge of the verdict or decision to file and serve his memorandum. If the successful party had knowledge of such decision beyond all doubt, as she did in this case, why require the defendant to serve notice of that fact on her? It clearly appears that she did have such knowledge, for she, by her attorney, served a notice of the decision on the defendant on the 11th day of October, 1878. Still, with this knowledge, plaintiff's memorandum was not filed until the 13th day of January, 1879—more than ninety days after she had knowledge of such decision.

We are of opinion, that the memorandum was filed too late, and that it should have been stricken out by the Court below.

The judgment and order denying the motion for a new trial are affirmed, and the order as to the memorandum of costs is reversed, and the cause remanded, with a direction to the Court below to strike out said memorandum.

MYRICK, J., and SHARPSTEIN, J., concurred.