[No. 11716. In Bank. — November 29, 1889.]

## NELLIE C. MILLARD, Appellant, v. SUPREME COUNCIL OF AMERICAN LEGION OF HONOR, Respondent.

Form of Findings — Conclusions of Law. — If there are in substance findings on the material issues, it is not necessary that they should be in the exact language of the pleadings, or in any particular form, and that certain findings of fact are improperly classified as conclusions of law is not a ground for reversal of the judgment, or for an order granting a new trial.

Life Insurance — Benefit Association — Change of Name of Beneficiary — Payment of Delinquent Assessments — Waiver of Forfeiture. — When the rules of a benefit association permit a member in good standing to change the name of the beneficiary from that of a deceased wife to that of another wife, the fact that certain assessments levied upon the death of members had became delinquent, and worked a suspension of membership, will not affect such right, if the association accepted payment of all such assessments before the change was made. The acceptance of such payment waived all forfeiture of the benefit certificate, and the fact that a formal order of reinstatement from suspension of membership was not made until after the change of the beneficiary is immaterial.

Id. — Proof of Death — Finding. — When by the rules of the supreme council of a benefit association evidence of death of a member is to be furnished by the subordinate council of which deceased was a member, it is not necessary, in an action against the supreme council upon a benefit certificate issued by the supreme council, to find whether the beneficiary furnished proof of the death.

Id. — Denial of Liability — Waiver of Preliminary Proof of Death. — When an insurance company or benefit association denies all liability for the payment of insurance, the general rule is that preliminary proof of the death is waived.

Appeal from an order of the Superior Court of the city and county of San Francisco granting a new trial.

The facts are stated in the opinion of the court.

*R. B. Mitchell*, for Appellant.

*Manuel Eyre*, for Respondent.

McFarland, J. — This is an action brought by the plaintiff, surviving wife of Eugene Alphonse Millard, deceased, to recover, as beneficiary, the amount of insur-

ance, or benefit certificate, issued by defendant upon
the life of said Millard, deceased.   The case was tried
without a jury, and the court pronounced judgment in
favor of plaintiff, and instructed her counsel to prepare
findings.   These were prepared accordingly, and adopted
and signed by the presiding judge.   A motion for a new
trial was made by defendant, and was granted by the
court, and from the order granting the new trial plain-
tiff appeals.   The deceased was a member of Golden
Council No. 118, a subordinate council of respondent.

From the opinion of the court below, inserted in the
brief of respondent, it appears that the court granted a
new trial for the reason that the findings were defective,
— that is to say, although the judgment was apparently
right, and although there is nothing to show that the
court below thought it wrong, yet it was set aside because
the findings (prepared after the court had reached its
conclusions, and having nothing whatever to do with
the legal merits of the case), did not, in the opinion of
the court, sufficiently state the grounds upon which the
judgment rested.   And under the numerous decisions
on the subject, the court might well have been in doubt
as to the sufficiency of the findings in the case at bar,
and is not to be criticised for its action.   When the
findings are inconsistent and contradictory, or when
they show affirmatively that the judgment is wrong,
then the question presented is usually a very simple
one; but when the findings all tend to support the judg-
ment, and the point raised is whether not there is enough
of them, then a question of great difficulty often arises.

What the code says about findings is very brief.   Sec-
tion 632, Code of Civil Procedure, provides that " upon
the trial of a question of fact by the court, its *decision*
must be given in writing"; and section 633 provides that
" in giving the *decision*, the facts found and the conclu-
sions of law must be separately stated."   This is prac-
tically all there is of it.   And upon this little apex there

has been built up (necessarily, no doubt) an inverted pyramid of legal decisions which overtops nearly every other monument of the law. Perhaps the very conciseness of the code has been the cause of some of the difficulties which the subject has presented.

It will be observed that the code does not prescribe what or how many facts the findings must contain. Indeed, in the sections above quoted, the word "findings" is not used at all. The language is that the "decision" must be in writing, and that in the decision the facts and conclusions of law must be separately stated. One main object of the provision seems to have been to prevent a court from summarily ordering judgment without giving any reasons for it, — without stating any facts or legal conclusions upon which it is based. There was also, no doubt, some intent to facilitate the review of a judgment on appeal. But surely the main object was not to afford a cover under which a losing party might successfully set a trap to capture a just judgment. The findings come after the case has been tried, considered, and determined, and after the character of the judgment — whether it is right or wrong — has been fixed. They are merely incidental to the main thing, — the judgment; and to test their sufficiency by a standard which exacts the extreme of accurate statement and minute detail is to put the incident in the place of the principal. Of course there ought to be findings on the material issues raised by the pleadings and evidence, but if it appear that there are, in substance, such findings, it is not necessary that they should be in the exact language of the pleadings, or in any particular form. Moreover, it is often difficult to determine whether a certain conclusion from specific facts found should be classified as a finding of "fact" or of "law"; and as the court said in *Burton* v. *Burton*, 79 Cal. 490, "the mere fact that one finding was placed under the wrong heading would be a very feeble reason for the reversal of a judgment."

In our opinion, applying the views above expressed, the findings in the case at bar were sufficiently full. There are four reasons given by the court below why the findings were insufficient; and we will examine them in the order in which they are stated.

1. When the benefit certificate was issued by respondent to said Millard, now deceased, one Sarah Alexandrina Millard, who was then his wife, was the beneficiary named therein. Afterward he notified and directed the respondent, as he had a right to do under the rules of the order, to change the name of the beneficiary from said Sarah Alexandrina to "Nellie C. Millard," the appellant herein, who was then his wife. It is averred in the complaint, and denied in the answer, that at the time of said notification the deceased was a "member in good standing" in the order; and it is contended that there is no finding on this issue. There is no finding in those very words, that is, that he was at the time " a member in good standing"; but assuming for the present that the issue was material, there were facts found which showed him to be in such standing. There is no pretense that the deceased lost his standing in any way other than by delay in paying certain assessments. The findings show that the benefit certificate was issued to him on July 2, 1881, he then "having become a member of said order, and having complied with all its rules and regulations." Assessments were not levied at stated times, but irregularly upon the death of a member; so that members could know of the levy of an assessment only by notice served on them. Deceased paid all assessments levied from June, 1881, to July 7, 1883, on which last-named day assessment No. 39 became delinquent. This and other subsequent assessments remained unpaid down to assessment No. 46, which became delinquent December 20, 1883; but no notice of such assessments was given to deceased until January 10, 1884. On the last-named date deceased was notified of said last assess-

ment, No. 46; that he was suspended for not paying it; "and that he could be reinstated upon paying said assessment, No. 46, in thirty days from said date, and that if not paid within that time he would have to be re-examined." Nothing was said about former assessments. Upon receiving said notice, deceased, on the same day (January 10, 1884), paid said assessment, No. 46, and all prior assessments due, and also assessment No. 47, which had been levied but was not yet delinquent. The amounts of these assessments were received by respondent and placed in its benefit fund. "On January, 26, 1884, said Millard paid all dues to said Golden Council No. 118, to March 3, 1884, the amount being received by said council and duly placed in its treasury." On February 8, 1884, all assessments and dues having been paid, said deceased gave the notice of the change of beneficiary. "Said notice was in writing, signed by said Millard, attested by the secretary of said Golden Council No. 118, the seal of said council affixed, and was upon a *blank furnished by defendant,* and is in all respects in accordance with its laws. rules, and regulations." On February 13, 1884, the deceased also paid assessment No. 48, which was then levied but not delinquent, and the amount paid was received by defendant and paid into its benefit fund. On February 22d plaintiff also paid assessment No. 49, levied before the death of said Millard, but not delinquent until March 17, 1884. There was only one meeting of the council in January, 1884, after deceased had paid assessment No. 46 and the previous assessments, at which meeting no action was taken in the matter of his reinstatement; but on February 13, 1884, the date of the next meeting, "at a meeting of said council No. 118, the said Millard was duly and regularly reinstated in full membership in said council." On February 23, 1884, the said Millard died. All the above facts are found.

We think these findings sufficiently show that when the notice of change of beneficiary was given, the de-

ceased had complied with all the requirements of the order, and had such standing as entitled him to his rights, notwithstanding the fact that the council did not act on the case at the meeting in January, and did not make the formal order of reinstatement until February 13th. Moreover, the court expressly finds "that the notice of change in beneficiary in said benefit certificate was in all respects in accordance with the laws, rules, and regulations of said defendant"; and we do not think that the virtue of this latter finding is destroyed because it is placed under the heading, "conclusions of law."

But really, the question whether or not the deceased, in a strict literal sense, was in good standing at the time mentioned was immaterial; because by levying the assessments Nos. 46, 47, 48, and 49, and by receiving the amounts of those assessments, as well as the amounts of the prior assessments then remaining unpaid, and retaining the moneys paid thereon and placing them in its treasury and benefit fund, the respondent waived any forfeiture that might have been insisted on, and became liable for the amount of the certificate.

In *Erdman* v. *Order of Herman's Sons of Wisconsin*, 44 Wis. 376, a case very similar to the case at bar, the court says (we quote from the *syllabus*, which is a correct condensation of the decision) as follows:—

"1. There is nothing in the charter or constitution of the defendant which renders inapplicable to it the doctrine of waiver applicable to other insurance companies.

"2. Forfeitures are not favored in the law; and the benevolent object of the order for whose benefit the defendant company was organized, with the provisions of defendant's constitution and by-laws, including a purpose to mitigate forfeitures, require the court to lay hold of any act showing an intention of defendant to waive the forfeiture in this case.

"3. The right to payment of a certain sum by defend-

ant as insurance on a life was forfeited in case the assured, at his death, had not paid all assessments; but after his death, all assessments against him were paid for him in pursuance of authority granted and a request made during his lifetime, and were by his lodge (which was defendant's agent for that purpose) received and for-warded to defendant, and by it accepted and retained until after commencement of this suit, with knowledge of the death of the assured on the part of the lodge and the defendant at the times of such receipt and accept-ance. *Held*, that the forfeiture was waived." (*Erdman v. Mutual Insurance Co. of the Order of Herman's Sons of Wisconsin*, 44 Wis. 376.)

In *Bailey* v. *Mutual Benefit Association*, 71 Iowa, 689, the supreme court of Iowa say: " 2. As to whether there was a default by the deceased in the payment of an assessment, we need not determine. There was evi-dence tending to show that before the death of the deceased the company received the amount of the as-sessment. The court below, we may presume, so found, and the evidence was sufficient to sustain the finding. It is, to be sure, insisted by the defendant that the money was demanded and received by mistake, the real inten-tion being to regard the certificate as forfeited. But we do not think that such mistake, if made, could be re-garded as material. The defendant received and held the money until after the death of the deceased, and he had a right to regard the contract as in force, regardless of any intention of the defendant to the contrary." (See also *Tobin* v. *Western Mutual Aid Society*, 72 Iowa, 261; *Osterloh* v. *M. H. F. Ins. Co.*, 60 Wis. 126; *Stylow* v. *Add. F. M. L. Ins. Co.*, 69 Wis. 224; *McDonald* v. *Supreme Council of the Order of Chosen Friends*, 78 Cal. 49.)

2. The second reason given is, that "the findings are furthermore defective in omitting to respond to the denials contained in the answer in reference to the several suspensions by the order of the membership of

the deceased." But the real facts about that matter are found. It is not averred in the answer, or pretended by respondent, that the deceased was ever suspended in any way, except so far as his delay in paying certain assessments (hereinbefore referred to) operated *ipso facto* to suspend him. And all the facts as to the delay in paying said assessments, and their subsequent payment and receipt by respondent, are specifically found. There is no averment or claim that the council of deceased ever suspended him, or took any steps in that direction, until the notice of January 10, 1884, when all assessments levied were immediately paid. From an examination of such parts of the constitution and regulations of the respondent as appear in the transcript, we are disposed to think that here, as in *McDonald* v. *Order of Chosen Friends, supra,* a legal suspension could be effected only by action taken in open council; but however that may be, it is clear from the authorities above cited that any effect which such delay in payment might have had was waived by the subsequent conduct of respondent, as hereinbefore stated. We think, therefore, that all that was material on the point was found.

3. The third objection seems to be the want of a finding that deceased at the time of his death was "a member in good standing in said order." But all the facts showing such standing were found; and moreover, there is a finding in these words: "That at the time of the death of said Millard he was a member in good standing in said order, had complied with all the rules, regulations, laws, and requirements of said order, and all conditions of said benefit certificate." If this finding had been placed a few sentences above the place it occupies, it would probably have been considered full enough for all purposes. It is placed, however, in the category of "conclusions of law." But the character of a thing does not depend upon the name given it.

4. A fourth objection to the sufficiency of the findings

is suggested, rather than positively stated; and that is, that there is no finding as to the satisfactory proof of Millard's death. The finding on this subject is: "That at the first meeting of Golden Council No. 118, subsequent to the death of the said Millard, to wit, February 27, 1884, said council was notified of the death of said Millard." This is an extremely technical point; for there is no doubt intimated as to the death of Millard. It is averred, is not denied, and is found by the court; and there is no qualification in the certificate as to the manner of death,—no reservation against even suicide. There should, therefore, be no leaning toward this defense; it should be clear and certain. But, in the first place, there is no provision, either in the certificate or in the by-laws of the order, that the beneficiary shall furnish proof of the death. The supreme council seems to act almost entirely through the subordinate councils. The certificate recites that Millard is "a member of Golden Council No. 118, A. L. H., located at San Francisco, Cal.," and that it is issued " upon evidence received from *said council* that said companion is a sixth-degree contributor," etc., and a main condition is that "said companion complies in the future with the laws, rules, and regulations now governing *said council*"; and the condition as to death is simply " upon satisfactory evidence of the death of said companion." And section 3 of law 1 is as follows: " On the death of a member, who at the time of his death shall not be under suspension for non-payment of benefit assessments, the council shall appoint a committee to ascertain the cause of death and the circumstances attending the same. The report of said committee, and the proof of the death, shall be forwarded to the supreme secretary by the commander and secretary, under the seal of the council, together with an official notice of such death in accordance with a *form furnished by the supreme secretary;* such notice must state the name, age at the date of initiation, the date and cause

of death, and the amount paid into benefit fund, and number of degree. Further proof of such death may be required, if deemed necessary by the supreme commander." It is evident, therefore, that the evidence of death was to be furnished to the supreme council by the council of which deceased was a member, and a finding that the plaintiff did or did not furnish such proof to respondent would have been immaterial. And again, respondent denied all liability upon the certificate, and in such a case the general rule is that the preliminary proof is waived. We think, therefore, that a new trial should not have been granted for the alleged defect in the findings on this point.

We have thus reviewed the grounds upon which, as respondent shows, the court below granted the new trial. Under the circumstances, we do not feel called upon to notice in detail other points made by respondent. We will say, however, that we have carefully examined the record, and think that the evidence supports the findings, and that the transcript shows no material errors.

The order granting a new trial is reversed.

FOX, J., WORKS, J., SHARPSTEIN, J., and BEATTY, C. J., concurred.

PATTERSON, J., concurring.— I concur in the judgment, on the ground that the findings are sufficient to support the judgment, and the evidence is without conflict; but I do not think that we can look at the opinion of the learned judge of the court below. It is no part of the record in this case. Even if it had been made a part of the transcript, it would be stricken out on motion. We have so decided in a recent case.

THORNTON, J., concurring.— I concur in the judgment, but differ *toto coelo* as to the *dicta* in relation to findings of facts. I consider the provision in the Code of Civil Procedure as to the finding of facts one of the most valu-

able in our practice, and one which should be enforced as other laws. They are binding on this and all other courts, as are all other statutes, and their enforcement cannot be evaded.

Rehearing denied.