[Civ. No. 6177. First Appellate District, Division One.—March 21, 1928.]

VERNE L. HOLMES et al., Respondents, v. ROBERT H. ANDERSON et al., Appellants.

Warren E. Libby and A. B. Bowman for Appellants.

Francis D. Adams and Earl Curtis Peck for Respondents.

CAMPBELL, J., *pro tem.*—This is an action brought to reform a contract of purchase and sale of certain letters patent. Injunctive relief also is asked. Judgment was entered for plaintiffs, and from such judgment and from the order denying a new trial and a motion to retax costs the defendants Robert H. Anderson, Ruth B. Anderson, Ruth B. Anderson as assignee of Robert H. Anderson, Ruth B. Anderson as assignee of W. C. James and Robert H. Anderson have appealed.

The contract in question was entered into on April 15, 1921, between Ruth B. Anderson, Ruth B. Anderson as assignee of Robert H. Anderson and as assignee of W. C. James and Robert H. Anderson and Ruth B. Anderson as husband and wife, as first parties, and Holmes Bed Manufacturing Company, a copartnership, doing business under the fictitious firm name and style of Holmes Bed Manufacturing Company, consisting of Verne L. Holmes, Gene C. Holmes, and Bondorra Holmes, as second parties, and recites in part "that whereas, the said Ruth B. Anderson is the assignee and holder of letters patent issued by the United States Patent Office, being serial No. 1,074,592 of date September 30, 1913, which said letters patent were originally issued to Robert H. Anderson, and which said letters patent cover a valuable improvement upon doors and recess for disappearing beds, and, whereas, the said Ruth B. Anderson is the assignee of certain letters patent of July 10, 1906, issued to W. C. James, covering certain valuable improvements consisting of a pair of doors, one with hinge and the other pivoted in the center with a gas stove secured to said door; and whereas the said parties of the second part are desirous of securing an assignment of all rights accruing to said patents or said assignees and to the said Robert H. Anderson and Ruth B. Anderson, either separately or jointly, and are desirous of securing said rights by purchase; now, therefore, it is agreed between the parties hereto as follows, to wit: said parties of the second part do hereby agree to purchase said patents and all rights thereunder, and the said parties of the first part agree to sell the same for the sum

of twenty thousand and no/100 ($20,000.00) dollars, payable in gold coin of the United States of America''—(then follows the manner of payment and the amounts to be paid on certain dates are set forth). "It is further provided, however, that during the life of the agreement, and pending any cancellation or sooner termination thereof, either by default or otherwise, the said parties of the first part shall have the right, and may operate, manufacture, sell and distribute and otherwise exploit and distribute said patent and improvements made thereunder.''

After the execution of the contract a license was granted defendant Los Angeles Wall Bed Company by Robert H. Anderson, one of the defendants, to manufacture wall beds under the patent right, and while Los Angeles Wall Bed Company was not a party to the contract in question, it was joined as a party defendant upon the theory that it had knowledge of the contract sought to be reformed and accepted the license granted with complete knowledge thereof, and which knowledge the court found in fact it had, and injunctive relief was therefore granted enjoining Los Angeles Wall Bed Company together with the other defendants from manufacturing, offering for sale or selling any beds manufactured in accordance with the letters patent granted plaintiffs under the agreement so long as plaintiffs retain the right granted to them.

The complaint alleges "that by mutual mistake of plaintiffs and said defendants the word 'exclusive' was not included in said contract; that the plaintiffs believed said contract granted to them the exclusive right to operate, manufacture, offer for sale, sell, distribute and otherwise exploit said patent, said improvements, and the beds manufactured under and in accordance with the said Letters Patent of the U. S. A., No. 1074592; that the defendants knew that plaintiffs so believed." Plaintiffs, therefore, sought to have the agreement reformed by inserting the word "exclusive" so that the agreement would read that the said parties of the second part shall have the *exclusive* right to manufacture, sell and distribute, and otherwise exploit and distribute said patents and said improvements made thereunder.

The court found in accordance with the allegations of the complaint, and the defendants, with the exception of de-

fendant Los Angeles Wall Bed Company, have appealed and they urge the following objctions: 1. The complaint does not state facts sufficient to constitute a cause of action; 2. There is a misjoinder of parties defendant in permitting the joinder of the Los Angeles Wall Bed Company, a corporation as a defendant; 3. The court has no jurisdiction over the subject matter of the action in so far as it pertains to injunctive relief, because that is a question of the infringement of a United States patent, the sole and exclusive jurisdiction of which is in the federal district court; 4. That plaintiffs are not entitled to any injunctive relief because they did not show any purpose or intent upon the part of any one or more of the defendants to violate the contract as sought to be reformed; 5. The judgment for reformation of the contract violates all rules pertaining to reformation of contract and violates the spirit and intent of the contract itself, attempting to make a new contract between the parties which was never contemplated; 6. The evidence necessary to warrant a court in reforming a contract must be clear, specific and unequivocal and the evidence in this case does not conform to such requirements; 7. The findings of fact do not support a judgment for the reformation of the contract; 8. The judgment must be vacated and set aside because it grants relief that was neither alleged in the complaint, asked for in the prayer thereof nor touched upon in the findings of fact and is completely beyond the issues in the case; 9. The entire cost bill in this action should have been disallowed because not served and filed within five days after notice of the decision of the court; 10. The court erred in allowing the item of costs set forth in the memorandum of costs and disbursements as "copy of transcript paid to B. E. McConnell, $90.40."

 Answering point one, we think the complaint states facts sufficient to constitute a cause of action. The complaint was intended to conform to section 3399 of the Civil Code, considered with sections 1576 and 1578 of the same code. Section 3399 provides: "When, through fraud or a mutual mistake of the parties, or a mistake of one party, which the other at the time knew or suspected, a written contract does not truly express the intention of the parties, it may be revised on the application of a party aggrieved, so as to express that intention, so far as it can be done with-

out prejudice to rights acquired by third persons, in good faith and for value." Section 1576 provides that a mistake may be either of fact or law. Section 1578 provides: "Mistakes of law constitute a mistake, within the meaning of this article, only when it arises from: 1. A misapprehension of the law by all parties, all supposing that they knew and understood it, and all making substantially the same mistake as to the law; 2. A misapprehension of the law by one party, of which the others are aware at the time of contracting, but which they do not rectify."

In support of their contention that the complaint does not state sufficient facts appellants have cited *Auerbach* v. *Healey,* 174 Cal. 60 [161 Pac. 1157]. That case sets out the facts required to be alleged in an action to reform an instrument as follows: "The complaint should allege what the real agreement was, what the agreement as reduced to writing was, and where the writing fails to embody the real agreement." We think these requirements were complied with in the present case. Paragraph IV of the complaint contains the following allegations: "That it was the intent and purpose of plaintiffs that said defendants by the terms of said agreement that plaintiffs should have exclusive right to operate, manufacture, offer for sale, sell, distribute and otherwise exploit said letters patent of the United States of America, No. 1074592, the improvements made thereunder and of the beds manufactured under and in accordance with the said letters patent; that by mutual mistake of plaintiffs and said defendants the word 'exclusive' was not included in said contract; that the plaintiffs believed said contract granted to them the exclusive right to operate, manufacture, offer for sale, sell, distribute and otherwise exploit said patents, said improvements, and the beds manufactured under and in accordance with the said letters patent of the United States of America, No. 1074592; that the said defendants knew that plaintiffs so believed." This paragraph alleged the intent; the omission of the word "exclusive"; the belief of plaintiffs and the knowledge of such belief by defendants, and attached as Exhibit "A" and made a part of the complaint is a copy of the agreement as executed showing what the agreement as reduced to writing was.

As to objection two that there is a misjoinder of parties defendant because Los Angeles Wall Bed Company is

joined as a defendant, it may be said that Los Angeles Wall Bed Company in our opinion was a proper party defendant, but in any event, as that defendant is not an appellant herein, we must conclude that it is satisfied with the judgment entered. Furthermore, the court on appeal will not consider the rights of a defendant not appealing (*Ambrose* v. *Drew*, 139 Cal. 665, 669 [73 Pac. 543]; *McCreery* v. *Everding*, 44 Cal. 284). In *Shakespear* v. *Smith*, 77 Cal. 638 [11 Am. St. Rep. 327, 20 Pac. 294], the court says: " 'There is no misjoinder of parties defendant. Any person may be made a defendant who has or claims an interest in the controversy adverse to the plaintiff, who is a necessary party to a complete determination or settlement of the question involved therein' (Code Civ. Proc., sec. 379). This section of the code adopts substantially the former rule in equity under which not only parties interested in the cause of action, but also in the relief obtained, or who would be affected by granting or withholding such relief, were proper parties.'' (See, also, *Miller* v. *Highland Ditch Co.*, 87 Cal. 430 [22 Am. St. Rep. 254, 25 Pac. 550]; *Birch* v. *Cooper*, 136 Cal. 637 [69 Pac. 420]; *Andrews* v. *Pratt*, 44 Cal. 309.) In the present case there can be no question but that Los Angeles Wall Bed Company would be affected by the granting of the relief sought.

■ The point urged under assignment three—that the court has no jurisdiction because the injunctive relief is a question of the infringement of a patent and is therefore in the exclusive jurisdiction of the federal district court— is without merit. There is no issue presented here on the question of an infringement of a patent right. Both respondents and Los Angeles Wall Bed Company were manufacturing beds under the same letters patent under agreements from parties claiming rights under the patent.

■ As to point four, that plaintiffs are not entitled to injunctive relief because they did not show any purpose or intent upon the part of defendants to violate the contract sought to be reformed, it may be said that defendant Los Angeles Wall Bed Company in its answer admits that prior to the commencement of the action it manufactured beds under its agreement with Robert H. Anderson. The injunctive relief granted by the judgment first decrees against the defendants Anderson, prohibiting them ''from trans-

ferring or granting to any person, firm or corporation, other than plaintiffs, any right, title or interest in and to Letters Patent No. 1074592, or any right to manufacture, offer for sale or sell beds made under or in accordance with the said Letters Patent, so long as plaintiffs conform with the terms and conditions of said agreement of April 17th, 1921,'' and, second, against the Los Angeles Wall Bed Company, prohibiting them ''from manufacturing, offering for sale, or selling any beds manufactured or sold under and in accordance with Letters Patent of the United States of America, No. 1074592, or any improvements made thereunder so long as plaintiffs perform all the terms and conditions on their part to be performed. . . . '' In so far as the injunctive relief against the defendants Anderson is concerned it is incidental to the rights granted to plaintiffs by the reformation of the contract. It adds nothing to the force of the judgment. The determination that plaintiffs had the exclusive right to use the patent, necessarily includes prohibition against the defendants Anderson from granting any such right to a third party. As far as defendant Los Angeles Wall Bed Company is concerned, it is not complaining of the judgment and has not appealed. ■ Furthermore, a court of equity will give all relief necessary to a final determination of the issues. ''In equity a partial or incomplete decree will not be entered. Therefore, for the purpose of avoiding more than one suit, and in order that a full, complete, effectual and final decree adjusting the rights and equities of all parties in interest may be entered and enforced, a court of equity once having assumed jurisdiction of a cause on any equitable ground will reach out and draw into its consideration and determination the entire subject matter, bringing before it all the parties interested therein, and will retain such jurisdiction until all matters involved in the litigation between the parties or growing out of and connected with the subject matter of the suit are finally disposed of. . . . Similarly, when a court of equity reforms an instrument, it can retain control and enforce it as reformed, administering full relief'' (10 R. C. L. 370, and cases cited).

■ We do not agree with appellants' contention under assignment five that the judgment for reformation of the contract violates all rules pertaining to reformation of con-

tract and attempts to make a new contract between the parties. The trial court, sitting as a court of equity, is interested in determining the true intent of the parties at the time the contract was executed. Having determined that intention, the court was authorized to revise the written contract so that it truly expressed that intent. The written contract evidences that intent unless the testimony shows a mistake. This mistake may be either a mistake of law or fact. To constitute a mistake of law, such mistake must be mutual, or it must be made by one party with the knowledge of its falsity by the other, and the failure of such other to rectify the mistake. The court determined the terms of the contract upon which the minds of the parties met and having so determined the intent of the parties, reformed the contract so as to render it true evidence of the actual contract upon which the minds of the parties met. Mr. Adams, the attorney who apparently represented all parties, testified: ''Q. Now, you had dictated this paper to Miss Jones then, leaving out the clause that you referred to? A. Yes, sir, she went away. Then Gene spoke up and said, 'There is no question about our having the right to go ahead and manufacture this and having the exclusive use of it, is there?' He said, 'Don't you think we ought to have something in there about that?' and I said, 'Why no, I don't see any use of that.' I said, 'damn it,' just like that in front of Mrs. Anderson, 'damn it, you have got that anyhow, you have got the whole contract now and I said, 'I have already put in—' I said, 'I have already put in here that the Andersons are the owners of this patent and all the rights thereunder and that they are selling that to you. Now,' I said 'you can't get any more than all, Gene.' '' Later on in Adams' testimony is the following: ''Q. When Mr. Holmes suggested that you put something in regarding their having the exclusive right to sell and manufacture, did the Andersons say anything in the way of objection or otherwise? A. Oh, no, no, no, no, not any objection. When I said— the Andersons did not say a thing then, but when I said, 'Why, you don't need that, damn it, you have got it all now, anyhow, you can't have any more than all,' and I said, 'They have given you an assignment and all the rights and privileges,' and I said, 'You don't need it,' Mr. Anderson and Mrs. Anderson just kind of nodded and smiled at the way I

had, either the advice I was giving to the Holmes or the way I said it. And they just smiled and nodded and acquiesced in that way. Then I stuck it in.'' On cross-examination the following appears: ''Q. (By Mr. Libby): You say you did specifically advise Mr. and Mrs. Anderson as well as the Holmes that the word 'exclusive' did not need to be in the contract? A. I said at that time that they were all sitting around, I said, 'I don't see any necessity of putting that in there,' I said 'damn it, you have bought it all and you can't have any more than all, he is assigning all his right, title and interest and all the improvements he may make on it and all the foreign patents—I don't see any more need of it at all.' '' Mr. Gene Holmes, one of the respondents, testified that he asked Mr. Adams, in the presence of the Andersons, if the contract gave him the exclusive right and Mr. Adams replied, ''absolutely''; that he would not have signed the contract and proceeded to manufacture beds had he not believed the contract gave him an exclusive right; that when it was all finished the Andersons wanted to pay half of Mr. Adams' fee, but he told them Mr. Adams was doing all their work and he would make a special price to them.

This testimony is sufficient to support the finding that it was the intent and purpose of the plaintiffs and defendants that by the terms of the agreement plaintiffs should have the exclusive right to operate, manufacture, offer for sale, sell and otherwise exploit 'those certain letters patent of the United States of America, No. 1074592. The evidence clearly shows that all the parties to the contract accepted Mr. Adams as their attorney in the preparation of the contract and accepted his advice as to the law, and that in the minds of all of the parties to the contract was the belief that by the agreement of sale the Andersons sold and transferred to the Holmes the exclusive right to use the patent. At any event, from the testimony quoted it is apparent that appellants understood the law to be as stated by Mr. Adams and that the Andersons, if they did not accept it as true, knew the misapprehension in the minds of respondents and did not rectify the error.

In *Benson* v. *Bunting*, 127 Cal. 532, 537 [78 Am. St. Rep. 81, 59 Pac. 991], the court says: ''The mistake was one which related to rights which the redemptioners had in the property sold under the decree of foreclosure, and was solely

in regard to the time within which an undisputed and well-understood legal right might be exercised. All understood the law alike, all making the same mistake; and where, as in this case, the mistake operates to deprive one of the parties of a valuable right, and to give the other a material advantage not contemplated by either, a court of equity will adjust their property rights as though the law relating thereto was, in fact, as the parties supposed it to be, if that becomes necessary to do justice between them. In *Hunt* v. *Rousmanier*, 8 Wheat. 174, 215 [5 L. Ed. 589, see, also, Rose's U. S. Notes], Chief Justice Marshall said: 'Although we do not find the naked principle that relief may be granted on account of ignorance of law asserted in the books, we find no case in which it has been decided that a plain and acknowledged mistake in law is beyond the reach of equity.' " And in *Hannah* v. *Steinman*, 159 Cal. 142, 146 [112 Pac. 1094, 1096], the court uses this language: "We deem it unimportant whether the alleged mistake in this case be held to be a mistake of fact or one of law. The mistake was the belief of both parties that the lot was not within the limits fixed by ordinance wherein it was unlawful under the ordinance of the city and county of San Francisco to construct a wooden building—ignorance of the fact that an ordinance had just been adopted placing such lot within such limits. Unconscious ignorance of a fact material to the contract or belief in the present existence of a thing material to the contract constitutes a mistake of fact (Civ. Code, sec. 1577), and a misapprehension of the law by all parties, all supposing that they know and understand it, and all making substantially the same mistake as to the law, constitutes a mistake of law (Civ. Code, sec. 1578)." (See, also, *Butte Creek Consolidated Dredging Co.* v. *Olney*, 173 Cal. 697, 708 [161 Pac. 260].)

*Hachstein* v. *Berghauser*, 123 Cal. 681 [56 Pac. 547], cited by appellants, is not inconsistent with the views here expressed, and *Burt* v. *Wilson*, 28 Cal. 632, 638 [87 Am. Dec. 142], cited, was decided in 1865, prior to the adoption of the code. In *Kopp* v. *Gunther*, 95 Cal. 63 [30 Pac. 301], the complaint failed to allege the mutuality of the mistake or knowledge on the part of the defendant of the mistake or his failure to rectify it.

■ From what has been said and from the testimony quoted it is apparent that there is no merit in appellants' assignment six, that the evidence does not conform to the requirement that to reform a contract the evidence must be clear and specific.

■ Appellants complain under point seven that the findings of fact do not support a judgment for the reformation of the contract. The trial court found that on April 15, 1921, plaintiffs and defendants Anderson entered into an agreement in writing referred to in the complaint as Exhibit "A," which agreement is set forth *in haec verba* in the findings. The court also found that it was the intent and purpose of plaintiffs and defendants by the terms of the agreement that the plaintiffs should have the exclusive right to use the patent. The court further found that plaintiffs believed that they had such right and that defendants knew that plaintiffs so believed. That a mutual mistake was made in the language used in the agreement is obvious from these findings, and a specific finding is, therefore, unnecessary. In *Jessen* v. *Peterson, Nelson & Co.*, 18 Cal. App. 349, 352 [123 Pac. 219], the court says: "Undoubtedly it was the duty of the trial court to find upon all of the material issues raised by the pleadings, and the judgment in the present case could not be upheld if it were true, as defendant claims, that there was an utter failure to find the facts of a material issue upon which a finding, had one been made, would not necessarily have been adverse to the defendant. Ordinarily it is necessary to the validity and sufficiency of findings that the trial court find the ultimate fact in issue, or such probative facts as will enable the court to declare that the ultimate fact necessarily results therefrom; but where probative facts are found from which the existence of the ultimate fact must be conclusively inferred the finding is sufficient, and a judgment based thereon will be sustained. (*Coveny* v. *Hale*, 49 Cal. 556; *Smith* v. *Acker*, 52 Cal. 219; *Mott* v. *Ewing*, 90 Cal. 231 [27 Pac. 194]; *Alhambra Water Co.* v. *Richardson*, 72 Cal. 598 [14 Pac. 379].)"

In *Millard* v. *Legion of Honor*, 81 Cal. 340, 342 [22 Pac. 864], the court uses this language: "Of course there ought to be findings on the material issues raised by the pleadings and evidence, but if it appear that there are, in substance,

such findings, it is not necessary that they should be in the exact langage of the pleadings, or in any particular form." (See, also, *Harlan* v. *Lambert*, 19 Cal. App. 349, 354 [125 Pac. 1079]; *Haller* v. *Yolo Water & Power Co.*, 34 Cal. App. 317, 319 [167 Pac. 197]; *Millard* v. *Supreme Council*, 81 Cal. 340, 342 [22 Pac. 864]; *Stoner* v. *Security Trust Co.*, 47 Cal. App. 216, 224, 190 Pac. 500]; *Tower* v. *Wilson*, 45 Cal. App. 123, 132 [88 Pac. 87]; *Lawson* v. *Steinbeck*, 44 Cal. App. 685, 688 [186 Pac. 842]; *Harris* v. *Mount Washington Co.*, 55 Cal. App. 144, 147 [202 Pac. 903].)

■ The conclusions of law and portion of the judgment complained of under assignment eight, that the judgment must be vacated and set aside because it grants relief that is not alleged in the complaint, asked for in the prayer and is beyond the issues, is an exercise of the well-known right of a court of equity to determine all issues presented and to make its judgment effective.

■ Appellants' objection nine, that the entire cost bill should have been disallowed because not served within five days after notice of the decision of the court, and their objection ten, that the court erred in allowing the item of costs set forth in the memorandum of costs and disbursements as "copy of transcript paid to B. E. McConnell, $90.40," may be considered together. The findings of fact and conclusions of law were signed by the court on March 10, 1925, and served on the attorneys for the respective parties defendant, as shown by admissions of services indorsed thereon, on March 3, 1925, before being presented to the court. The memorandum of costs and disbursements was filed March 21, 1925. The affidavit of Earl Curtis Peck, one of the attorneys for plaintiffs, shows that the memorandum of costs and disbursements was served on the attorneys for defendants by mail on March 20, 1925, and that all of the attorneys of record in the action maintain their offices in the city of Los Angeles. As the findings of fact and conclusions of law were served on the defendants' attorneys by the attorneys for the plaintiffs before they were presented to the trial court for signature or filed with the clerk, the attorneys for plaintiffs, in whose favor the decision ran, had knowledge of the decision on March 10, 1925, the date it was filed, and consequently the filing and service of the cost bill, even if properly served on March 21, 1925, was

not filed and served within five days after notice of the decision of the court (sec. 1033, Code Civ. Proc.). "Originally said section contained no provision requiring the memorandum or a copy thereof to be served on the adverse party, but the legislature of 1874 (Stats. 1873–74, p. 343) so amended it as to require such service, with the result that service of the memorandum is now one of the indispensable steps to be taken before the matter of costs may be considered by the court or judge. . . . It follows that if one party fails, within the time prescribed, to file *and* serve his memorandum of costs, then he is to be conclusively deemed to have waived the costs, if any, accruing in his favor" (*Griffith* v. *Welbanks & Co.,* 26 Cal. App. 477, 480 [147 Pac. 986]). Knowledge of the decision by the party entitled to costs is sufficient to satisfy the requirement of the code, though he receive no written notice (*Dow* v. *Ross,* 90 Cal. 562 [27 Pac. 409]; *O'Neil* v. *Donahue,* 57 Cal. 226; *Mullally* v. *Benevolent Society,* 69 Cal. 559 [11 Pac. 215]). If, however, the attempted service by mail had been made within the time prescribed by the code, it could not benefit plaintiffs, as under the facts here such service is not authorized.

Section 1011 of the Code of Civil Procedure relates to how and when notices and papers are to be served. It clearly indicates that every reasonable effort be exhausted to make a direct service upon the attorney or upon someone in his behalf, in person, before service by mail may be resorted to. It is only after unsuccessful attempts to serve the attorney in person or by leaving the paper to be served with someone of mature years, either at his office or his residence, have failed that a notice or other paper to be served may be mailed to him at his office or residence. The only other circumstances under which service by mail may be made are those prescribed in section 1012 of the Code of Civil Procedure: "Service by mail may be made, where the person making the service, and the person on whom it is to be made, reside or have their offices in different places, between which there is a regular communication." It is incumbent upon one making service by mail to show that the case is one in which such service is permitted and that the mode pointed out by the statute has been followed. "A deposit in a post-office in the county or place in which a party who may be

served by mail has his residence or office would not constitute service on him by mail, because a service on him at his residence or office in his own county, to be effectual, must be made personally or constructively in the manner prescribed by subdivisions 1 and 2 of section 1011, Code of Civil Procedure. It cannot be made by mail unless the residence of the attorney or party to be served was unknown'' (*Reed* v. *Allison,* 61 Cal. 461, 466). Service upon an attorney must be made in the manner provided by section 1011 of the Code of Civil Procedure (*Thompson* v. *Brannan,* 76 Cal. 618 [18 Pac. 783]; *Kayer* v. *Benedict,* 4 Cal. App. 48 [87 Pac. 231]; *East Side Canal and Irr. Co.* v. *Superior Court,* 30 Cal. App. 528 [158 Pac. 773]).

It follows that defendants' motion that the cost bill be stricken from the records should have been granted. With this exception we find no prejudicial error.

The judgment is modified by striking therefrom the item of costs, and as so modified is affirmed. Respondents will recover their costs on appeal.

Tyler, P. J., and Knight, J., concurred.