PAGANACCI, PLAINTIFF AND APPELLANT, *v.* LEBRÓN, DEFENDANT AND APPELLEE.

APPEAL from the District Court of Guayama in an Action for Malicious Prosecution.

No. 1333.—Decided February 15, 1917.

FINDINGS OF FACT—CONCLUSIONS OF LAW—STATEMENT OF FACTS—BILL OF EXCEPTIONS.—There is no duty in trial courts in Porto Rico to make findings of fact and conclusions of law as understood and practiced in California. There was a similar duty under the Spanish system, but since the adoption of the present Code of Civil Procedure in 1904, with an elaborate provision for a statement of facts and bill of exceptions to be prepared by the appellant and merely settled by the court, it has been understood necessarily that the former *resultandos* and *considerandos* were abolished. Our code was virtually taken from that of California and in copying the latter the sections which alluded to findings of fact and conclusions of law were omitted.

ID.—ID.—OPINION OF COURT.—An amendment made to the code in 1911 (sec. 227) requires that on the final trial of a case the district judge shall file a brief statement setting out the facts as found by him and giving the reasons for his decision; but that provision has been construed as only requiring the district judge to file a reasoned opinion setting out the facts. The use of

the words "as found by him" gives it no broader meaning, for any verdict, or any decision of the court on the facts, is necessarily a finding; and to say that the courts must make findings is very different from saying that the Legislature desired to establish a system of findings of fact and conclusions of law such as exists in California.

MALICIOUS PROSECUTION—PROBABLE CAUSE—MALICE.—In an action for malicious prosecution the burden is on the plaintiff to prove lack of probable cause, and while malice may be inferred from a lack of probable cause, it is not a necessary inference.

The facts are stated in the opinion.

Mr. José C. Ramos for the appellant.

Mr. Manuel A. Martínez Dávila for the appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

This was an action for malicious prosecution. The record on appeal, among other things, includes the pleadings, a motion for a new trial, the order on the latter from which this appeal is taken and the notices on appeal from the judgment and from such order. There is included besides in the papers before us a copy of the decision of the court, made apparently in pursuance of the Act of March 9, 1911, wherein a new section is substituted for the former section (227) of the Code of Civil Procedure. After reciting the fact of pleadings and a trial the court made the following so-called findings of fact:

1. That the complainant and defendant are adults, the former living in Lajas and the latter in Guayama, Porto Rico.

2. That on December 2, 1913, the complainant was in a shoe shop belonging to the defendant whereat he was accustomed to buy his footwear, and he took a pair of shoes valued at $3.50 without paying therefor; that at that time and previous thereto the complainant was an Insular policeman in Guayama; that on the following day, inasmuch as the complainant did not return to pay the price of the shoes, the defendant called up the police headquarters, asked for the complainant and was informed that he had left Guayama, having resigned his position as an Insular policeman; that the complainant did not have a current account in the shop of the defendant.

3. That the defendant, after having requested the complainant at various times by mail to pay the value of the shoes, on January 17, 1914, proceeded to file a complaint against him in the Municipal Court of Guayama, which complaint reads as follows:

"I, Santos Lebrón, resident of Guayama, etc., file a complaint against Buenaventura Paganacci for the crime of false representation (article 470) committed in the following manner:

"That on the 7th of December, 1913, and in Guayama, of the Judicial District of Guayama, the said defendant, knowingly, intentionally and availing himself of false and fraudulent pretenses, defrauded the complainant of a pair of shoes which he took from the shop of the complainant for the purpose of trying them on, having appropriated the said shoes without their belonging to him or without having paid for them. The shoes are worth $3.50, etc."

4. That on the same date a warrant of arrest was issued by the municipal judge of Guayama, the same being executed by Insular Policeman Tomás Torres in Lajas on the 20th of January, 1914, it appearing from the record that defendant gave bond on the 19th of January of the same year.

5. That the trial being set for the 30th of January, the defendant was cited for the 27th of January and on the 28th of the same month and year the complainant went to the shop of the defendant offering to pay the price of the shoes which he owed. This offer being accepted by the defendant, the complainant paid the value of the shoes, demanded a receipt therefor, which was given and which reads as follows: "I received of D. Buenaventura Paganacci the sum of $3.50, which I credit him (*abono*) for a pair of shoes. Guayama, January 29, 1914. Santos Lebrón."

6. That on the following day, the 30th of January, the case was heard and the judge of the municipal court, after hearing the complaint, and the receipt being presented with the statements of the defendant after having satisfied the price of the shoes, acquitted him.

7. That after the trial the complainant asked of the defendant that he amend the receipt to make it state that it was a balance of an account, which the defendant refused because the complainant had no account at his shop.

8. That the complainant left the Insular Police with an excellent record, according to his official demit, and was a person of good conduct and acknowledged reputation.

9. That in view of the proof adduced the court finds that, although the complainant had to pay costs for defending himself against the offense of which he was charged in the municipal court, it was not sufficiently proved that he suffered other damages than the costs mentioned, nor that the said complaint affected his reputation or character in the community.

The court then goes on to say that the foregoing were the essential findings of fact which the court thought it should find without entering into a discussion in detail of the proof offered. The court then asks itself whether there had been sufficient proof to justify a judgment in favor of the complainant. In part answer to its own question, the court cites a part of the opinion of this court in *Parés* v. *Ruiz,* 19 P. R. R. 323. Then the district court goes on to say, if not to find, that, taking that opinion as a guide, the complainant had been accused of crime by the defendant and that the trial had resulted favorably to the complainant, the court, however, pointing out that the acquittal was a result of the fact that the complainant had paid the value of the goods which were said to have been fraudulently obtained. The court then asks itself whether malice and a lack of probable cause had been shown.

Before attempting to answer this question, the court makes another excerpt from the case of *Parés* v. *Ruiz,* whereupon the court proceeds to say, if not to find, that from the proof it appears that the complainant did not have a credit account in the defendant's shop, reciting some of the proof. The court concludes, if it does not find, that the complainant might have proved the fact of having a current account in the shop

of the defendant by requiring the latter to bring his books into court and thus prove in an evident manner and without doubt the theory of his defense that the shoes were charged to his account, the court concluding, if not finding, that the defendant and one of his witnesses admitted that on the day after he took the shoes the complainant left Guayama without paying therefor, and that it was only when the defendant was complained against and the trial was set that the complainant tried to arrange the matter, paying the price of the shoes and obtaining a receipt to use as a defense. And then the court goes on to deduce, if not to find, that there was no malice on the part of the defendant and that there was probable cause for the complaint. The court points out that the acts of the complainant were sufficient to induce the defendant to believe that the complainant was trying to defraud him of the value of the goods. The trial court also examines the proof to conclude that there was no proof of damages. Then follows another excerpt from the case of *Parés* v. *Ruiz, supra,* the court concluding as follows: "It does not appear that there was probable cause or malice." Whereupon, from such recital, the court made the following conclusions of law:

1. That the complainant and defendant had the capacity to litigate;

2. That the defendant had no right to the remedy he sought because he failed to prove the lack of probable cause at the time the complaint was made, or that the complaint was made maliciously;

3. That the parties had no right to costs.

The appellant gave notice of a motion for a new trial and subsequently filed the said motion on two grounds: First, that the sentence or decision in the case was against law; and, second, that the proof was insufficient to justify the judgment or decision rendered in this case.

The principal matter that has occupied the attention of the court and caused a delay in the rendering of this decision

is the strong insistence made by the appellant that the court failed to make due findings of fact. The theory is in some States, and particularly in California where findings of fact and conclusions of law are required, that the failure to find on all the material issues is a decision against law and the error may be reached by a motion for a new trial or on appeal.

Among other alleged failures in the findings, which it is unnecessary to rehearse, the appellant maintains that the decision is defective in not making a finding as to whether the shoes were taken on credit or not. For reasons that may partially appear from the foregoing recital, but which we shall discuss hereafter, we do not think that, legally, there was such a failure to find; but the principal ground of our conclusion in this case is that there is no duty in the trial court in Porto Rico to make findings of fact and conclusions of law, as the same have been practiced, understood, systematized and interpreted in California and other States.

Under the Spanish system in force in this Island up to 1904, the judges of the trial courts were bound to make their judgments in the form of *resultandos* and *considerandos*. In 1904, however, the present Code of Civil Procedure went into effect with an elaborate provision for statements of fact and bills of exception, and from that time it has been understood, and necessarily understood, we think, that the former *resultandos* and *considerandos* were abolished. Such bills or statements are primarily to be prepared by the appellant and the court is merely to settle them. Our code was taken from Idaho and the code of that State was taken from California. In copying the code of California or Idaho (and it is more convenient to refer to the primary source of California because it has the more elaborate jurisprudence), the sections which allude to findings of fact and conclusions of law were omitted. This court had no way of determining definitely what a court found to be a fact and what it did not. On March 9, 1911, the Legislature, among other things, enacted

the following substitution for section 227 of the Code of Civil Procedure:

"Section 227.—On the final trial of any case in a district court the judge thereof shall make out and file a brief statement in the case setting out the facts as found by him and giving the reasons for his decision."

As we have indicated, the appellant insists that by the enactment of this section the Legislature made it the duty of the court to find on all material issues and that the court did, in point of fact, fail to find on an important material issue, as heretofore set forth; and the appellant cites a number of authorities from California to support his view. In California, as appellee points out, there exists a series of enactments which, either directly or by practice and interpretation, have required the courts to make findings of fact and conclusions of law that form part of the judgment roll and may be reviewed on appeal in the same way as a statement of facts or bill of exceptions may be reviewed here now or somewhat in the same way. These pertinent sections are as follows:

"Sec. 632.—Upon the trial of a question of fact by the court, its decision must be given in writing and filed with the clerk within thirty days after the cause is submitted for decision.

"Sec. 633.—In giving the decision, the facts found and the conclusions of law must be separately stated. Judgment upon the decision must be entered accordingly.

"Sec. 634.—Findings of fact may be waived by the several parties to an issue of fact:

"1. By failing to appear at the trial.

"2. By consent in writing, filed with the clerk.

"3. By oral consent in open court, entered in the minutes.

"Sec. 635.—Upon the trial of a question of fact by the court, either party may, at any time before final submission, present to the court in writing a statement of any proposition of law upon which, were the action being tried by a jury, the court might be required to instruct the jury. The court must, before giving its decision in the case, indorse upon each of such requests a statement that the same

is allowed, or refused, or modified in such particular as the court
may think proper. Any error in allowing, refusing, or modifying
any such request, may be reviewed on motion for new trial and upon
appeal, in the same manner and with the same effect as in the case
of requested instructions to a jury.

"Sec. 636.—On a judgment for the plaintiff upon an issue of
law, he may proceed in the manner prescribed by the first two sub-
divisions of section five hundred and eighty-five, upon the failure
of the defendant to answer. If judgment be for the defendant upon
an issue of law, and the taking of an account, or the proof of any
fact, be necessary to enable the court to complete the judgment, a
reference may be ordered, as in that section provided."

Now, if the Legislature of Porto Rico had desired to fol-
low the practice of California and Idaho, the simplest thing
to do would have been substantially to copy these sections,
although even then, by reason of the conditions of practice
in those States, it might be questioned whether we took them
with all the special interpretation. As the rest of the code
was taken from Idaho, this failure is an indication that the
Legislature of Porto Rico did not intend to follow the Cali-
fornia code with respect to findings and conclusions. The
California code, in section 635, seemingly indicated that the
parties must make requests for findings, although there are
decisions of California which decide that it is the duty of
the court, without such request, to find on all the material
issues. In any event, section 635 gives a party an oppor-
tunity to have a particular finding made, and it also makes
it his duty to except thereto when he wants to have the fail-
ure of the court to make a particular finding reviewable. Sec-
tion 635 is entitled "Findings, how prepared."

Under the English and American systems, law cases are
primarily to be tried by jury, and parties are entitled to spe-
cific instructions. To do away with a jury trial in Califor-
nia, the consent of the parties, express or implied, is neces-
sary. Of course we do not know what proportion of cases
is tried there by the court without a jury, but it is necessa-
rily more or less limited, depending, as it must, upon the con-

sent of both parties. It is evident that there is not in California, nor in any other of the code States, a uniform practice of trial by the court in civil cases as exists in Porto Rico. In reading, then, section 227 of the Code of Civil Procedure, it should clearly appear that it was the intention of the Legislature to impose upon its district courts the duty of making findings in the same way as the practice of California requires. That such was not the intention in Porto Rico was the general understanding of the bench and bar and specifically the understanding of this court, as indicated by the following decisions, although the matter was never elaborately discussed: *García v. San Juan Light & Transit Co.,* 17 P. R. R. 595; *Martínez, Assignee of Sanjurjo, v. García,* 18 P. R. R. 2; *Pelicier v. Fernández,* 19 P. R. R. 111, 116; *Rubio v. Charvounier,* 20 P. R. R. 299; *Quiñones v. Vivoni,* 20 P. R. R. 458, 462; *González v. Cabrero,* 22 P. R. R. 318, expressly deciding that findings form no part of the judgment roll; *Albite v. Lecumberri,* 22 P. R. R. 795. See also order of this court dated April 23, 1915, in the case of *Calzada v. Pagán.*

California apparently had the practice of requiring findings on material facts even before the enactment of sections 632 *et seq.* If the system of California be compared with the wording of section 227, we think it must be evident that the Legislature of Porto Rico was not seeking to put in force the practice of California.

This court originally interpreted section 227 as being nothing more than an enactment requiring the judge of the district court to file a reasoned opinion setting out the facts. The language of the law is that the judge shall file a "brief statement." If it had been the intention of the Legislature that the court should make findings of fact and conclusions of law, it would have been perfectly easy to say so. It makes no difference that the Legislature used the words "as found by him." Any verdict, or any decision of the court on the facts, is necessarily a finding. The nature of a "finding"

in its most general sense is elaborately set forth in *People*
v. *Sutton*, 17 P. R. R. 340 *et seq.* To say that the court must
make findings is very different from saying that the Legis-
lature desired to establish a system of findings of fact and
conclusions of law as exists in California or any other State.
It has been suggested that Tennessee has a similar law. To
judge by the case of *Stanley* v. *Donoho*, 16 Lea, 492, the stat-
ute provides that "upon the trial of a question of fact by
the court, the decision, if requested by either party, shall
be given in writing, stating the facts found and the conclu-
sions thereon, which shall constitute part of the record."
This section presupposes a request before judgment, and
the findings are specially made a part of the record. In other
words, the parties have a definite opportunity of being heard
before judgment with respect to their requests. Neither in
substance nor by placing the statutes side by side and com-
paring them literally, is there any indication that our Legis-
lature followed Tennessee. In Porto Rico the statement is
presumably to be filed with the judgment or with the order
for the judgment, or even afterwards. Such has been the
almost invariable practice.

In another appeal our attention has been drawn to the
fact that section 233 of the Code of Civil Procedure also al-
ludes to findings of fact as forming part of the judgment
roll. This section was enacted in 1904 and has remained un-
changed up to date, and was accidentally copied into the code
because evidently there was no such thing technically known
as findings of fact under the system in force in Porto Rico.
When the code of 1904 was adopted, as it was somewhat in
haste, there were literal transcriptions from the code of Cali-
fornia like "bonds on appeal," "homesteads" and "find-
ings of fact" which were accidentally left in the Code of Civil
Procedure copied from Idaho and which were never amended
or stricken out. Findings of fact being a distinct system
or institution, it does not seem reasonable to suppose that

the Legislature, by the Act of March 9, 1911, was trying to supply a deficiency.

Perhaps there might have been some doubts and perhaps this court perforce might have deduced, or attempted to deduce, the whole California system of findings of fact, but the contemporary construction was against such an interpretation; and we think at this date, after this continued interpretation by the Supreme Court of Porto Rico and the district courts, that it would have to be the Legislature in any event which would have to change the rule established. A contemporaneous construction is always favored in law.

California followed a different line, and this is what Mr. Justice McFarland has to say on the matter in *Millard* v. *Council of American Legion of Honor*, 81 Cal. 341:

"What the code says about findings is very brief. Section 632, Code of Civil Procedure, provides that 'upon the trial of a question of fact by the court, its *decision* must be given in writing'; and section 633 provides that 'in giving the *decision*, the facts found and the conclusions of law must be separately stated.' This is practically all there is of it. And upon this little apex there has been built up (necessarily, no doubt) an inverted pyramid of legal decisions which overtops nearly every other monument of the law. Perhaps the very conciseness of the code has been the cause of some of the difficulties which the subject has presented."

In spite of the fact that this court fully realizes that it would be expedient and convenient for it to have a full opportunity to review the theory of the court below on the law and the facts, we think it is the duty of the Legislature, and not of this court, to supply the necessary machinery. The specific enactment for the review of the facts is still a statement of the case or bill of exceptions and must remain so until the Legislature definitely gives an alternative or complementary way to do so.

Under the system contended for by the appellant for failure to make material findings, or supposed material findings, it would be necessary for this court to send cases back.

for frequent new trials, a practice we have steadily avoided
and with regard to which we have a special declaration of
the Legislature in 1906 (Session Laws of 1906, p. 164) which
provides:

"Section 306.—When the judgment, order or decree of the court
below shall be reversed, the court shall proceed to render such judg-
ment, order or decree as the court below should have rendered ex-
cept when it is necessary that some matters of fact be ascertained,
or the damage to be assessed or the matter to be decreed is uncertain,
in any of which cases the cause shall be remanded for a new trial
in the court below."

Moreover, we think that the court below, in substance,
made the particular finding for which the appellant is con-
tending, although not in so many words. The appellant com-
plains that there was no finding as to whether the said com-
plainant "took the shoes to try them on or whether he took
them on credit." He maintains that the belief of the defend-
ant was an important matter and that the court should have
made a specific finding. Generally, it would be impossible
for a court to know of the belief of a prosecuting witness ex-
cept by his acts, and in this case it was the duty of the com-
plainant to show that the said defendant did not believe that
the complainant took the shoes to defraud the said defend-
ant. As the law does not require impossibilities, the only
way that the complainant could, prove his case was by showing
by a preponderance of the evidence that from the facts the de-
fendant had no justification in so believing. It was a ques-
tion of fact to be found by the court. The court says that
the complainant took these goods without paying for them
and failed to pay for them on request, and that the complain-
ant had no credit account with the defendant and had failed to
prove his theory of the case with respect to the goods being
sold to him on credit. The court not only finds that appellant
had no such account, but, as we know, it is a familiar custom of
merchants to make some special entry if the purchaser has
not a current account. These recitals or findings of the court

are absolutely inconsistent with a finding that the complainant took the goods on credit. The findings of the court and the theory of the appellant as to the facts could not co-exist. There is no possibility that the court accepted the theory of the facts contended for by appellant and yet rendered judgment against him. There must be a *non sequitur* between the finding and the conclusion to entitle an appellant to a reversal under similar circumstances.

In the Act of March 9, 1911, even on appellant's theory, there is no order prescribed for findings of fact or conclusions of law. The opinion of the court does, in point of fact, set out some specific findings of fact and some specific conclusions in which it definitely, as we have pointed out, makes a finding or findings adverse to the appellant's theory. There would be no authority under the wording of the Act of March 9, 1911, to insist upon any particular form or order for findings. The Supreme Court of California, in the case of *Millard* v. *Legion of Honor, supra,* said:

"It will be observed that the code does not prescribe what or how many facts the findings must contain. Indeed, in the sections above quoted, the word 'findings' is not used at all. The language is that the 'decision' must be in writing, and that in the decision the facts and conclusions of law must be separately stated. One main object of the provision seems to have been to prevent a court from summarily ordering judgment without giving any reasons for it,—without stating any facts or legal conclusions upon which it is based. There was also, no doubt, some intent to facilitate the review of a judgment on appeal. But surely the main object was not to afford a cover under which a losing party might successfully set a trap to capture a just judgment. The findings come after the case has been tried, considered, and determined, and after the character of the judgment—whether it is right or wrong—has been fixed. They are merely incidental to the main thing,—the judgment; and to test their sufficiency by a standard which exacts the extreme of accurate statement and minute detail is to put the incident in the place of the principal. Of course there ought to be findings on the

material issues raised by the pleadings and evidence, but if it appear that there are, in substance, such findings, it is not necessary that they should be in the exact language of the pleadings, or in any particular form. Moreover, it is often difficult to determine whether a certain conclusion from specific facts found should be classified as a finding of 'fact' or of 'law'; and as the court said in *Burton* v. *Burton,* 79 Cal. 490, 'the mere fact that one finding was placed under the wrong heading would be a very feeble reason for the reversal of a judgment.' "

The court also made a specific finding in the course of its opinion and in its conclusions of law that the complainant had failed to make out a lack of probable cause. We, do not care to stress the point at this juncture, but whether there is or is not a lack of probable cause is perhaps an ultimate fact in an action for malicious prosecution. In California the court is only bound to find the ultimate fact. The authorities in the United States are that the question of the lack of probable cause is a mixed question of law and of fact.

In the case of *Stewart* v. *Sonneborn,* 98 U. S. 183, the Supreme Court of the United States quotes with approval from the opinion of Lord Denham, to say:

"I have always understood the question of reasonable or probable cause on the facts found to be a question for the opinion of the court, and malice to be always a question for the jury."

It would have seemed reasonable that, if the complainant had desired a finding on his special theory of the case, he should have asked therefor before the court rendered its judgment, for otherwise it seems that the court did make a finding on the material issue of probable cause whereunder the question of taking the goods on credit *vel non* was necessarily included. This, we gather, was in part the court's own view of the matter, because, in disposing of the motion for a new trial, it said that it was unnecessary for the court to use the words "to try them on," inasmuch as the important matter was that the complainant had taken away a pair of shoes

without paying for them, showing by his subsequent conduct an intention to defraud; and the court also said that in dismissing the complaint in this case the court thought the defendant believed the complainant guilty. In other words, the court intended to negative and, we think, did negative the possibility of a finding either of lack of probable cause or that the complainant took the goods on credit.

Reviewing the facts, we likewise cannot find that the complainant proved a lack of probable cause. The burden was on him and there was proof tending to show that he took the shoes, giving no other explanation than that he would try them on, and he left Guayama without paying for them and apparently without giving the defendant any explanation. We do not by any means approve of a merchant arresting a man if there is any doubt as to the conditions under which articles are withdrawn from a shop, but the court below weighed the proof and we are not prepared to say that it was not justified in finding that the defendant had reasonable cause to believe that the complainant was trying to defraud him of a pair of shoes; and even if there should be a lack of probable cause, we should not infer malice in this case. Malice, as the Supreme Court of the United States in the case of *Stewart* v. *Sonneborn, supra,* points out, may be inferred from the lack of probable cause, but it is not a necessary inference. The circumstances of this case deny it.

The judgment and the order appealed from must be

*Affirmed.*

Chief Justice Hernández and Justices del Toro and Aldrey concurred.

Mr. Justice Hutchison dissented.