PAGANACCI, DEMANDANTE Y APELANTE, *v.* LEBRÓN, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de Guayama, en pleito sobre persecución maliciosa.

No. 1333.—Resuelto en febrero 15, 1917.

CONCLUSIONES DE HECHO—CONCLUSIONES DE DERECHO—EXPOSICIÓN DEL CASO—PLIEGO DE EXCEPCIONES.—Las córtes de distrito en Puerto Rico no están en

el deber de hacer conclusiones de hecho y de derecho como han sido entendidas y practicadas en California. Existía una obligación semejante bajo el sistema español, pero desde la adopción del vigente Código de Enjuiciamiento Civil en el año 1904, que contiene un precepto amplio sobre exposiciones del caso y pliegos de excepciones que han de ser preparados por el apelante y aprobados por la corte, se ha entendido necesariamente que los antiguos *resultandos* y *considerandos* quedaron abolidos. Nuestro código fué tomado virtualmente del de California y al copiarse fueron omitidos los artículos que hacían referencia a las conclusiones de hecho y de derecho.

ID.—ID.—OPINIÓN DE LA CORTE.—La enmienda hecha al Código de Enjuiciamiento Civil en el año 1911 (artículo 227), prescribe que en el juicio definitivo de cualquier caso el juez de distrito hará y archivará una relación breve del caso, exponiendo los hechos según éstos resulten ante él y dando las razones en que funde su decisión, pero dicho precepto ha sido interpretado en el sentido de que únicamente exige que el juez de distrito archive una opinión razonada exponiendo los hechos. El uso de las palabras ''según éstos resulten ante él'' (*as found by him*), no da a dicho precepto un significado más amplio, pues cualquier fallo o decisión de la corte sobre los hechos necesariamente es una conclusión y el decir que la corte debe hacer conclusiones, es muy distinto a expresar que la Legislatura deseaba establecer un sistema de conclusiones de hecho y de derecho tal como existe en California.

PERSECUCIÓN MALICIOSA—CAUSA PROBABLE—MALICIA.—En una acción por persecución maliciosa el demandante está en la obligación de probar la falta de causa probable y si bien puede inferirse malicia de la falta de causa probable, no es, sin embargo, una deducción necesaria.

Los hechos están expresados en la opinión.

Abogado del apelante: *Sr. José C. Ramos.*

Abogado del apelado: *Sr. Manuel A. Martínez Dávila.*

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Esta fué una acción por persecución maliciosa. El récord en apelación consta, entre otros documentos, de las alegaciones (*pleadings*), una moción de nuevo juicio, la resolución de la corte sobre dicha moción contra la cual ha sido interpuesta la presente apelación y los escritos de apelación contra la sentencia y contra dicha resolución. Se acompaña además a los documentos sometidos a nuestra consideración, una copia de la sentencia de la corte dictada aparentemente de acuerdo con la ley de marzo 9, 1911, en la que se ha substituído un nuevo artículo por el anterior artículo 227 del Código de Enjuiciamiento Civil. Después de hacer referencia al hecho relativo

a las alegaciones y al juicio formó la corte las siguientes llamadas conclusiones de hecho, (*findings of fact*):

1. Que demandante y demandado son mayores de edad, el primero residente en Lajas y el segundo en Guayama, P. R.

2. Que en diciembre de 1913, el demandante estuvo en una tienda de zapatos que pertenece al demandado y en la cual acostumbraba él a comprar su calzado, y tomó un par de zapatos valorados en $3.50, sin abonar su importe; que en aquella fecha y con anterioridad a la misma el demandante era policía insular en Guayama; que al día siguiente y como no volviese el demandante a satisfacer el importe de los zapatos, el demandado llamó al cuartel de la policía solicitando al demandante y fué informado que éste se había marchado de Guayama, habiendo renunciado el cargo de policía insular; que el demandante no tenía cuenta corriente en la tienda del demandado.

3. Que el demandado después de requerir varias veces al demandante por correo para que abonase el importe de los zapatos, procedió en 17 de enero de 1914 a formular denuncia contra él ante la Corte Municipal de Guayama, cuya denuncia lee como sigue:

"Yo, Santos Lebrón, vecino de Guayama, calle Derkes, de treinta y cinco años, formulo denuncia contra Buenaventura Paganacci, por delito de falsa representación e impostura, artículo 470, cometido de la manera siguiente:

"Que en diciembre 7 de 1913 y en Guayama, del Distrito Judicial de Guayama, el referido acusado a sabiendas e intencionalmente y valiéndose de falsas y fraudulentas simulaciones ha defraudado al denunciante en un par de zapatos que tomó en el establecimiento del denunciante con el fin de medírselos, habiéndose apropiado los referidos zapatos sin pertenecerles ni haberlos pagado. Los zapatos valen $3.50, etc."

4. Que en la misma fecha se libró un mandamiento de arresto por el Juez Municipal de Guayama, siendo diligenciado por el policía insular Tomás Torres, en Lajas, el día 20 de enero de 1914, apareciendo del récord de la causa que el acusado prestó fianza el 19 de enero del mismo año.

5. Que señalada la vista del juicio para el día 30 de enero fué citado el acusado, por citación expedida en 27 de enero; y en 29 del mismo mes y año el demandante fué a la tienda del demandado ofreciéndole abonar el importe de los zapatos que adeudaba.  Aceptado esto por el demandado, abonó el demandante el importe del calzado exigiendo un recibo que le fué otorgado y dice como sigue: "Recibí de Don Buenaventura Paganacci la suma de tres cincuenta, los cuales abono por un par de zapatos.  Guayama, 29 de enero de 1914.  Santos Lebrón."

6. Que al día siguiente, 30 de enero, se vió el juicio y el juez de la corte municipal, después de oir al denunciante, y presentado el recibo con las manifestaciones del acusado de haber sido satisfecho el importe de los zapatos, le absolvió.

7. Que el demandante después del juicio solicitó del demandado le enmendase el recibo haciendo constar que era como saldo de cuenta, a lo que se negó el demandado por no tener el demandante cuenta en su casa de comercio.

8. Que el demandante salió de la policía insular apareciendo de su hoja de servicio con un excelente récord, y siendo una persona de buena conducta y reconocida reputación.

9. Que a pesar de la prueba aducida la corte entiende que si bien el demandante ha tenido que sufragar gastos para defenderse de la acusación que se le imputaba en la corte municipal, no aparece suficientemente demostrado que sufriera otros daños y perjuicios que los gastos mencionados; ni que la dicha denuncia hubiera afectado su reputación o carácter en la comunidad.

La corte entonces continúa manifestando que las anteriores fueron las conclusiones de hecho esenciales que entendió la corte que debía consignar, sin entrar a discutir en detalle la prueba practicada.  Entonces la corte se pregunta a sí misma si ha habido suficiente prueba que justifique una sentencia a favor del demandante.  Como parte de la contestación a su propia pregunta, la corte cita la opinión de este tribunal en el caso de *Parés* v. *Ruiz,* 19 D. P. R. 345.  El juez de distrito

pasa entonces a decir, si no a establecer una conclusión, tomando esa opinión como guía, que el demandante había sido acusado por el demandado; que la causa había terminado favorablemente para el demandante, llamando, sin embargo, la corte la atención a que la absolución se debió al hecho de que el demandante había abonado el importe de la cantidad que se decía defraudada. Pregunta entonces la corte si se ha demostrado malicia y falta de causa probable por parte del demandado.

Antes de tratar de contestar esta pregunta hace la corte otra selección del caso de *Parés* v. *Ruiz,* después de lo cual pasa la corte a decir, si no a hacer la conclusión que aparece de la prueba que el demandante no tenía cuentas en la casa del demandado, y hace referencia a algunas de las pruebas. Concluye la corte, si es que no hace conclusión, de que el demandante podría haber demostrado el hecho de tener una cuenta corriente en la casa del demandado requiriendo a éste a que mostrara los libros a la corte y así sostener de una manera evidente y sin dudas su teoría de defensa de que los zapatos fueron cargados en cuenta, y termina la corte diciendo, si no haciendo la conclusión que está admitido por el demandado y declarado por uno de sus testigos, que al día siguiente en que tomó los zapatos el demandante se marchó de Guayama sin abonar su importe, y que fué solamente al ser denunciado el demandante y señalado el juicio que éste último trató de arreglar el asunto abonando su valor y obteniendo un recibo para usarlo como defensa. Y pasa entonces la corte a deducir, si no a llegar a la conclusión, de que no existió malicia por parte del demandado y que hubo causa probable para la acusación. Manifiesta la corte que los actos ejecutados por el demandante fueron más que suficientes para inducir al demandado a creer que el demandante trataba de defraudarle por la cantidad valor de la mercancía. También examina la corte sentenciadora la prueba para llegar a la conclusión de que no hubo prueba de daños y perjuicios. Hace entonces otra cita del caso de *Parés* v. *Ruiz, supra,* y con-

cluye en esta forma: "No aparece que haya habido causa probable o malicia." De lo anteriormente expuesto la corte forma las siguientes conclusiones de ley:

1. Que demandante y demandado tienen capacidad para litigar.

2. Que el demandante no tiene derecho al remedio que solicita, por no haberse demostrado que no existiera causa probable al tiempo de formularse la denuncia, y que ésta hubiera sido hecha maliciosamente.

3. Que las partes no tienen derecho a costas.

El apelante notificó una moción sobre nuevo juicio que fué radicada subsiguientemente y que se funda en dos motivos:

Primero, que la sentencia o decisión dictada en este caso es contraria a la ley; segundo, que la prueba es insuficiente para justificar la sentencia o decisión dictada en este caso.

La principal cuestión que ha ocupado la atención de la corte y originado una demora en dictarse esta sentencia se debe a la gran insistencia por parte del apelante de que la corte dejó de hacer las debidas conclusiones de hecho (*findings of fact*). La teoría es en algunos Estados y particularmente en California donde se exigen las conclusiones de hecho y de derecho, que el no hacerse conclusiones sobre todas las cuestiones esenciales (*material issues*), da lugar a que la sentencia sea contraria a la ley y pueda corregirse el error mediante una moción de nuevo juicio o en apelación.

Entre otras supuestas omisiones en las conclusiones (*findings*), que no es necesario repetir, el apelante alega que la sentencia es defectuosa por no hacerse en ella una conclusión (*finding*), respecto a si los zapatos fueron o no tomados a crédito. Por razones que en parte aparecen de lo dicho anteriormente, pero que discutiremos más adelante, no creemos que legalmente hubo tal omisión en hacer conclusiones (*findings*), pero el fundamento principal de nuestra conclusión en este caso es que en Puerto Rico el juez sentenciador no está en el deber de hacer conclusiones de hecho (*findings of fact*) y conclusiones de derecho (*conclusions of law*), como

han sido practicadas, entendidas, sistematizadas e interpretadas en California y otros Estados.

Bajo el sistema español vigente en esta isla hasta 1904, los jueces de las cortes sentenciadoras estaban obligados a dictar sus sentencias en la forma de *resultandos* y *considerandos*. En el año 1904, sin embargo, empezó a regir el actual Código de Enjuiciamiento Civil en el que existe un precepto amplio relativo a exposiciones de hechos y pliego de excepciones y se ha entendido desde entonces, y creemos que ha sido así necesariamente, que los antiguos *resultandos* y *considerandos* quedaron abolidos. Dichos pliegos o exposiciones deben ser preparados primeramente por el apelante y la corte simplemente ha de aprobarlos. Nuestro código fué tomado del Estado de Idaho y el Código de ese Estado del de California. Al copiar el Código de California e Idaho (y es más conveniente hacer referencia a la fuente principal de California por tener la jurisprudencia más extensa) los artículos que se referían a conclusiones de hecho (*findings of fact*) y conclusiones de derecho (*conclusions of law*) fueron omitidas. Esta corte no tenía medio de determinar concluyentemente lo que la corte declaraba ser un hecho y lo que no lo era. En 9 de marzo de 1911, la legislatura, entre otras cosas, decretó lo siguiente en sustitución del artículo 227 del Código de Enjuiciamiento Civil:

"Artículo 227.—En el juicio definitivo de cualquier caso en una corte de distrito, el juez de la misma hará y archivará una relación breve del caso exponiendo los hechos según éstos resulten ante él y dando las razones en que funde su decisión."

Como ya hemos indicado el apelante insiste en que al ponerse en vigor este artículo la legislatura impuso a la corte el deber de establecer conclusiones sobre todas las cuestiones esenciales (*material issues*) y que en realidad de verdad la corte dejó de resolver una cuestión esencial e importante como hasta ahora hemos dicho y cita el apelante un número de autoridades de California para sostener su criterio. En California, como sugiere el apelado, existe una serie

de preceptos legales que ya directamente, o por la práctica e interpretación, han exigido a las cortes hacer conclusiones de hecho y de derecho que forman parte del legajo de la sentencia y que pueden ser revisadas en apelación del mismo modo que una relación de hechos o pliego de excepciones pueden ser revisados aquí ahora en forma algo parecida. Estos artículos pertinentes son los siguientes:

"Artículo 632.—Al resolver la corte una cuestión de hecho deberá emitir por escrito su decisión y archivarla con el secretario dentro de los treinta días después de haber sido sometida la causa para su resolución.

"Artículo 633.—Al emitir la decisión los hechos declarados probados y las conclusiones de derecho deben ser expresadas separadamente. La sentencia fundada en la decisión será registrada de conformidad.

"Artículo 634.—Puede hacerse renuncia a las conclusiones de hecho (*findings of fact*) por las diferentes partes en una cuestión de hecho:

"1. Dejando de comparecer en el juicio.

"2. Mediante el consentimiento por escrito radicado en la oficina del secretario.

"3. Mediante el consentimiento oral hecho en corte abierta y anotado en las minutas.

"Artículo 635.—Al resolver la corte una cuestión de hecho, cualquiera de las partes puede en cualquier momento antes de someterse el caso en definitiva presentar por escrito a la corte una exposición de cualquier cuestión legal respecto a la cual, de ser el caso juzgado por jurado, podría exigirse a la corte que instruyera al jurado. Y tiene la corte antes de dictar su decisión en el caso que hacer constar en cada una de dichas peticiones que la misma se concede, niega o modifica en el sentido en que la corte estime procedente. Cualquier error al permitir, denegar o modificar tal petición puede ser revisado por virtud de una moción de nuevo juicio o mediante apelación en la misma forma y en igual sentido que en el caso en que se pide que se den instrucciones al jurado.

"Artículo 636.—Tratándose de una sentencia a favor del demandante sobre una cuestión legal puede ésta proceder en la misma forma prescrita en los dos primeros párrafos del artículo quinientos ochenta y cinco al dejar el demandado de formular su contestación. Si la sentencia se dicta a favor del demandado sobre una cuestión de ley

y fuere necesario para fundamentar el fallo de la corte la rendición de una cuenta o la prueba de algún hecho, puede disponerse el informe previo de peritos.''

Ahora bien, si la Legislatura de Puerto Rico hubiera deseado seguir la práctica de California e Idaho, lo más sencillo hubiera sido copiar sustancialmente estos artículos aunque en ese caso por razón de las condiciones de práctica de esos Estados, todavía podría dudarse si los tomábamos con toda su especial interpretación. Como lo restante del código fué tomado de Idaho, esta omisión indica que la Legislatura de Puerto Rico no tuvo la intención de seguir el Código de California en lo que respecta a conclusiones de hecho y de derecho. El Código de California en su artículo 635 indica, al parecer, que tienen las partes que solicitar las conclusiones, aunque existen decisiones de California que resuelven que está en el deber la corte, sin que se le pida, de hacer conclusiones sobre todas las cuestiones esenciales. De todos modos el artículo 635 da a una parte la oportunidad de obtener una determinada conclusión y también le impone el deber de excepcionarla cuando quiere que sea revisada la omisión de la corte en hacer determinada conclusión. El artículo 635 lleva por título ''Conclusiones (*findings*), como se preparan.''

De acuerdo con el sistema inglés y americano los asuntos legales son juzgados primeramente por jurado, y tienen las partes derecho a que se den instrucciones específicas. Para prescindirse del juicio por jurado en California es necesario el consentimiento expreso o tácito de las partes. Por supuesto que no conocemos cuál es la proporción de los casos que se celebran allí ante la corte sin jurado, pero está necesariamente más o menos limitada, dependiendo, como tiene que ser, del consentimiento de ambas partes. Es evidente que en California no existe ni en ningún otro de los códigos de los Estados una práctica uniforme de juicio ante la corte en casos civiles como existe en Puerto Rico. Al leer, pues, el artículo 227 del Código de Enjuiciamiento Civil debería

verse claramente que fué la intención de la Legislatura el imponer a las cortes de distrito el deber de hacer conclusiones (*findings*) de igual modo que como lo exige la práctica de California. Que esa no era la intención de Puerto Rico fué la interpretación general de las cortes y abogados y especialmente de este tribunal como se indica en las siguientes decisiones, si bien la cuestión nunca fué discutida extensamente: *García* v. *San Juan Light & Transit Co.*, 17 D. P. R. 616; *Martínez, cesionario de Sanjurjo*, v. *García*, 18 D. P. R. 2; *Pellicier* v. *Fernández*, 19 D. P. R. 117; *Rubio* v. *Charvounier*, 20 D. P. R. 315; *Quiñones* v. *Vivoni*, 20 D. P. R. 490; *González* v. *Cabrero*, 22 D. P. R. 341, en el que se resuelve de modo expreso que las conclusiones (*findings*) no forman parte del legajo de la sentencia; y *Albite* v. *Lecumberri*, 22 D. P. R. 856. Véase también la resolución de este tribunal de fecha abril 23, 1915, en el caso de *Calzada* v. *Pagán*.

California aparentemente tenía la práctica de exigir conclusiones sobre hechos esenciales hasta antes de estar en vigor los artículos 632 y siguientes. Si se compara el sistema de California con el texto del artículo 227, creemos que tiene que ser evidente que la Legislatura de Puerto Rico no trataba de poner en vigor la práctica de California.

Este tribunal interpretó originalmente el artículo 227 en el sentido de que no era otra cosa que un precepto que exige al juez de la corte de distrito el archivar una opinión razonada exponiendo los hechos. El texto de la ley dice que el juez archivará "una relación breve." Si hubiera sido la intención de la legislatura que la corte debía hacer conclusiones de hecho y de derecho, hubiera sido enteramente fácil el decirlo así. No importe que la legislatura usara las palabras "según éstos resulten ante él" (*as found by him*). Cualquier veredicto o decisión de la corte sobre los hechos es necesariamente una conclusión (*finding*). De la naturaleza de una "conclusión" en su sentido más general se trata extensamente en el caso de *El Pueblo* v. *Sutton*, 17 D. P. R. 345

y siguientes. Expresar que la corte tiene que hacer con-
clusiones es muy distinto a decir que la legislatura deseaba
establecer un sistema de conclusiones de hecho y de derecho
como existe en California, o en cualquier otro Estado. Se
ha sugerido que Tennessee tiene una ley parecida. A juz-
gar por el caso de *Stanley* v. *Doncho,* 16 Lea, 492, el esta-
tuto prescribe que "al resolver la corte una cuestión de hecho
se dictará por escrito la decisión, de solicitarlo cualquiera
de las partes, exponiendo los hechos declarados probados y
las conclusiones basadas en los mismos, lo cual constituirá
parte de los autos." Este artículo supone previamente, una
petición antes de dictarse la sentencia y las conclusiones for-
man especialmente parte de los autos; en otras palabras,
las partes tienen oportunidad clara de ser oídas antes de
dictarse sentencia con respecto a sus peticiones. Ni en sus-
tancia, ni colocando los estatutos uno al lado del otro y com-
parándolos literalmente existe nada que indique que nues-
tra legislatura siguió a Tennessee. En Puerto Rico la rela-
ción presuntivamente ha de archivarse con la sentencia o
con la orden para que se dicte sentencia o aun después. Tal ha
sido la práctica casi invariable.

En otra apelación se llamó la atención de este tribunal
hacia el hecho de que el artículo 233 del Código de Enjuicia-
miento Civil también hace referencia a las conclusiones de
hecho en el sentido de que forman parte del legajo de la sen-
tencia. Este artículo fué aprobado en el año 1904 y ha con-
tinuado sin sufrir cambio alguno hasta la fecha y fué co-
piado accidentalmente en el código, pues evidentemente no
se conocía técnicamente nada semejante a conclusiones de
hecho bajo el sistema en vigor en Puerto Rico. Al apro-
barse el código de 1904, como fué adoptado de prisa, exis-
tían transcripciones literales del Código de California, tales
como "fianza en apelación," "*homesteads,*" y "conclusio-
nes de hecho" que quedaron accidentalmente en el Código
de Enjuiciamiento Civil copiado de Idaho y que jamás fue-
ron enmendadas o suprimidas. Siendo las conclusiones de

hecho un sistema distinto o institución, no parece razonable suponer que la legislatura al aprobar la ley de marzo 9, 1911, trataba de corregir una deficiencia.

Tal vez pudieron haber existido dudas y quizás si este tribunal por fuerza podría haber deducido o tratado de deducir el sistema total de conclusiones de hecho de California, pero la interpretación contemporánea estaba en contra de tal interpretación y creemos ahora, después de esta continuada interpretación del Tribunal Supremo de Puerto Rico y las cortes de distrito, que en todo caso tendría que ser la legislatura la que habría de cambiar la regla establecida. La ley siempre favorece la interpretación contemporánea.

California siguió otra norma y es esto lo que tiene que decir el Juez Sr. McFarland en el caso de *Millard* v. *Council of American Legion of Honor*, 81 Cal. 341:

"Lo que dice el código respecto a conclusiones es muy sencillo. El artículo 632, Código de Enjuiciamiento Civil, prescribe que 'al resolver la corte una cuestión de hecho, deberá emitir su *decisión* por escrito'; y el artículo 633 dispone que 'al emitir la *decisión* deben expresarse por separado los hechos declarados probados y las conclusiones de derecho.' Esto es prácticamente todo lo que se habla del asunto. Y sobre esta pequeña cúspide se ha construído (sin duda necesariamente) una pirámide en sentido inverso de decisiones legales que casi sobresale a cualquier otro monumento de la ley. Quizás si el mismo laconismo del código ha sido la causa de algunas de las dificultades que ha presentado la cuestión."

No obstante el hecho de que este tribunal se da perfecta cuenta de que para él sería práctico y conveniente el tener una amplia oportunidad para revisar la teoría de la corte inferior respecto a la ley y los hechos, creemos que es el deber de la legislatura y no de esta corte el suministrar el mecanismo necesario. El precepto específico para la revisión de los hechos es todavía una exposición del caso o pliego de excepciones y tiene que continuar así hasta tanto la legislatura proporcione expresamente un medio alternativo o complementario de hacerlo.

De acuerdo con el sistema alegado por el apelante, por la omisión en hacer conclusiones esenciales o supuestas conclusiones esenciales se haría necesario para este tribunal el tener que devolver los casos para frecuentes nuevos juicios, práctica que invariablemente hemos evitado y acerca de la cual tenemos un precepto claro de la legislatura en el año 1906, (Leyes de la Sesión de 1906, página 65) que prescribe:

"Artículo 306.—Cuando se revocare la sentencia, orden o decreto del tribunal inferior, la corte procederá a pronunciar la sentencia, orden o decreto que debió haber dictado el tribunal inferior, salvo los casos en que fuere necesario aclarar determinados puntos de hecho, o que la indemnización que hubiere de fijarse o materia sobre la cual hubiere de decretarse, fuere dudosa, pues en cualquiera de estos casos se devolverá la causa para su revisión al tribunal inferior."

Además, creemos que la corte inferior en sustancia hizo la conclusión particular que alega el apelante, aunque no con las mismas palabras. Se queja el apelante de que no hubo conclusión (*finding*) respecto a si dicho demandante "se llevó los zapatos para probárselos, o si los cogió fiados." Sostiene que la creencia del demandado era una cuestión importante· y que la corte debió haber hecho una conclusión específica. Generalmente sería imposible para una corte saber cuál es la creencia que tiene un demandante como no sea por sus actos y en este caso era el deber del demandante el probar que dicho demandado no creyó que el demandante tomó los zapatos para defraudar al expresado demandado. Como la ley no exige cosas imposibles el único modo en que podía el demandado probar su caso era demostrando por la preponderencia de la prueba, que según los hechos no estaba justificado el demandado en tener tal creencia. Era una cuestión de hecho para ser resuelta por la corte. Dice la corte que el demandante tomó estos artículos sin pagar por ellos, que dejó de pagar al ser requerido para ello, y que el demandante no tenía cuenta corriente con el demandado y dejó de probar la teoría del caso con respecto a que

los artículos le fueron vendidos a crédito.  La corte no sólo
hace la conclusión de que el apelante no tenía tal cuenta,
sino que como sabemos es costumbre corriente de los comer-
ciantes el hacer alguna anotación especial si el comprador
no tiene cuenta corriente.  Estas relaciones o conclusiones
de la corte son absolutamente incompatibles con la conclu-
sión de que el demandante tomó los artículos a crédito; las
conclusiones de la corte y la teoría del apelante en cuanto
a los hechos no pueden existir conjuntamente.  No existe posi-
bilidad alguna de que la corte aceptó la teoría que acerca de
los hechos alegó el apelante y que sin embargo dictó senten-
cia contra él.  Tiene que haber un *non sequitur* entre la re-
sultancia y la conclusión para tener derecho un apelante a una
revocación bajo circunstancias semejantes.

En la ley de marzo 9, 1911, aun bajo la teoría del apelante,
no se prescribe orden alguna para las conclusiones de hecho
o de derecho.  La opinión de la corte  en realidad de verdad
contiene algunas conclusiones específicas de hecho y algu-
nas conclusiones específicas de derecho, pero también entra
en una discusión general en la que, como ya hemos indicado,
establece claramente una conclusión o conclusiones contra-
rias a la teoría del apelante.  No habría ninguna autoridad
de acuerdo con el texto de la ley de marzo 9, 1911, para in-
sistir en ninguna forma u orden particular para hacer las
conclusiones.  La Corte Suprema de California en el caso
de *Millard* v. *Legion of Honor, supra,* dice lo siguiente:

"Se observará que el código no prescribe cuáles o cuántos hechos
deben contener las conclusiones.  A la verdad que en los artículos
arriba citados no se emplea en absoluto la palabra 'conclusiones'
(*findings*).  Expresa el texto que la 'decisión' tiene que ser por
escrito, y que en la decisión los hechos y conclusiones de derecho
deben expresarse separadamente.  El fin principal del precepto pa-
rece haber sido el impedir que una corte ordene sumariamente que
se dicte sentencia sin exponer alguna razón para ello, sin relatar
algunos hechos o conclusiones legales en que dicha sentencia se funde.
Hubo también, sin duda, la intención de facilitar la revisión de una
sentencia en apelación.  Pero seguramente que el objeto principal

no fué el de suministrar un pretexto por virtud del cual la parte vencida podría con éxito valerse de un ardid para obtener una sentencia justa. Las conclusiones vienen después que el caso ha sido juzgado, considerado y resuelto, y después que se ha determinado el carácter de la sentencia, ya sea correcto o incorrecto. Son meramente incidentales al asunto principal, a la sentencia; y poner a prueba su suficiencia por una medida que exige la mayor exactitud en la exposición y particularidad de detalles, es poner el incidente en el sitio de lo principal. Desde luego que debe haber conclusiones sobre las cuestiones esenciales levantadas por las alegaciones y la prueba, pero si resulta que existen en substancia tales conclusiones, no es necesario que sean en el lenguaje exacto de las alegaciones, o en alguna forma determinada. Además, a menudo se hace difícil el determinar si cierta conclusión de hechos específicos debe ser clasificada como una conclusión de 'hecho' o de 'derecho'; y como dijo la corte en el caso de *Burton* v. *Burton,* 79 Cal. 490, 'el mero hecho de haber sido puesta una conclusión bajo un encabezamiento equivocado, sería una razón muy floja para la revocación de la sentencia."

También la corte hizo la conclusión específica en el curso de su opinión y en sus conclusiones de derecho de que el demandante había dejado de probar la falta de causa probable. No tenemos interés en dar mucha importancia a esta materia en este momento, pero la cuestión de si hay o nó falta de causa probable, es quizás el hecho último en una acción por persecución maliciosa. En California la corte está obligada solamente a determinar el hecho último. Las autoridades en los Estados Unidos se pronuncian en el sentido de que la cuestión de falta de causa probable es una cuestión mixta de derecho y de hecho.

En el caso de *Stewart* v. *Sonneborn,* 98 U. S. 187, la Corte Suprema de los Estados Unidos cita con aprobación de la opinión de Lord Denham lo siguiente:

"Siempre he entendido que la cuestión de causa razonable o probable sobre los hechos declarados probados es una cuestión para el criterio de la corte, y que la malicia es siempre una cuestión para la consideración del jurado."

Parecería razonable que si el demandante hubiera deseado

que se hiciera una conclusión sobre su teoría especial del caso debió haberla solicitado antes de que la corte dictara su sentencia. De otro modo parecería que la corte hizo una conclusión sobre la cuestión esencial de causa probable en la cual la cuestión de tomar los artículos a crédito *vel non* estaba comprendida necesariamente. Creemos que éste fué en parte el propio criterio de la corte acerca del asunto, pues al resolver la moción de nuevo juicio dijo que era innecesario para la corte usar las palabras "para medírselos," toda vez que lo material era que el demandante se había llevado el par de zapatos sin abonar su importe, demostrando con su conducta ulterior la intención de defraudar; y también dijo la corte que al desestimar la demanda en este caso la corte consideró que el demandado creyó que el demandante era culpable. En otras palabras, la corte intentó negar, y creemos que negó, la posibilidad de hacer una conclusión bien acerca de la causa probable o de que el demandante tomó los zapatos a crédito.

Revisando los hechos tampoco podemos llegar a la conclusión de que el demandante probó la falta de causa probable. Era su deber hacerlo y hubo prueba tendente a demostrar que él tomó los zapatos, sin dar más explicación sino que iba a probárselos y que se fué de Guayama sin pagar su importe y al parecer sin dar ninguna explicación al demandado. De ningún modo aprobamos el hecho de que un comerciante arreste a un hombre si existe alguna duda respecto a las condiciones bajo las cuales los artículos fueron tomados de una tienda, pero la corte inferior aquilató la prueba y no estamos en condiciones de poder decir que no estuvo la corte justificada en declarar que el demandado tenía motivo razonable para creer que el demandante estaba tratando de defraudarle un par de zapatos; y aun cuando hubiera una falta de causa probable no inferiríamos malicia en este caso. La malicia, como indica la Corte Suprema de los Estados Unidos en el caso de *Stewart* v. *Sonneborn, supra,* puede inferirse de la falta de causa probable, pero

no es una deducción necesaria. Las circunstancias de este caso la niegan.

La sentencia y orden apeladas deben ser confirmadas.

*Confirmadas la sentencia y orden apeladas.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro y Aldrey.

El Juez Asociado Sr. Hutchison disintió.