PEDRO COLÓN y GRACIELA ORTIZ, demandantes y apelados, *v.* THE IMPERIAL GUARANTEE & ACCIDENT INSURANCE COMPANY OF CANADA y MARGARITA CINTRÓN, demandadas y apelantes.

Núm. 10631.—*Sometido:* Septiembre 30, 1952.   *Resuelto:* Octubre 7, 1952.

F. *Fernández Cuyar*, abogado de las apelantes; *Bolívar Pagán*, abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR MARRERO emitió la opinión del tribunal.

En acción de daños y perjuicios instada por Pedro Colón y Graciela Ortiz contra Margarita Cintrón y The Imperial Guarantee & Accident Insurance Company of Canada, el tribunal inferior dictó sentencia declarando con lugar la demanda y condenando a las demandadas a pagar a los demandantes la suma de $10,000, más las costas y $600 para honorarios de abogado.[1] En apoyo de su sentencia el tribunal emitió una extensa opinión, en la cual aparecen las siguientes conclusiones de hechos:

"1. El sábado 9 de julio de 1949, entre 6:00 p.m. y 7:00 p.m., el vehículo de motor, guagua, de tablilla número OP–30039 del año 1949–50, propiedad de la demandada Margarita Cintrón, era dedicada a empresa de servicio público de ésta en Patillas, Puerto Rico.

"2. A la hora, día y sitio indicados dicha guagua era conducida por su izquierda por un trozo recto de la calle residencial y comercial Estrella, de Patillas, trozo que tenía 20 a 21 pies de anchura.

"3. La guagua así conducida era guiada por el chófer Simón Cordero, quien allí y entonces y al ocurrir el accidente que más adelante se dirá era empleado como tal chófer de la demandada Margarita Cintrón y actuaba dentro de la esfera de dicho empleo con ésta.

"4. A la hora, día y sitio indicados, desde hacía una semana, dicha guagua no estaba provista de claxon, bocina o aparato de

_____

[1] Según la sentencia, la aseguradora sólo respondería de $3,000—su responsabilidad bajo la póliza se limitaba a esa suma—así como de tres décimas de las costas y honorarios de abogado.

alarma alguno, ello con conocimiento de la demandada Margarita Cintrón y del expresado chófer Simón Cordero.

"5. A la hora, día y sitio indicados, dicha guagua era conducida por el expresado chófer sentado éste en un asiento que quedaba como a cuatro pies del parabrisas, ello con conocimiento de la demandada Margarita Cintrón.

"6. A la hora, día y sitio indicados, el guía de dicha guagua no estaba instalado a la izquierda y sí casi al centro de la misma, ello con el conocimiento de la demandada Margarita Cintrón.

"7. El tener dicha guagua el asiento del chófer y el guía dispuestos como las precedentes Conclusiones de Hecho números 5 y 6 indican, respectivamente, redujo considerablemente a dicho Simón Cordero mientras guiaba aquella en la hora, día y sitio indicados la visibilidad periférica y la lateral izquierda inmediatas a dicho vehículo, ello con el conocimiento de la demandada Margarita Cintrón y del expresado chófer Simón Cordero.

"8. A la hora, día y sitio indicados, y siendo conducida dicha guagua a una velocidad de 15 a 18 millas por hora, es decir, de 25 a 30 kilómetros por hora, la menor Ivette Socorro Colón Ortiz, de tres años de edad, fué alcanzada por las ruedas 'guaretas' posteriores de la izquierda de dicha guagua las cuales le pasaron por encima de la cabeza de la menor fracturándole el cráneo, a consecuencia de lo cual ésta murió en el acto.

"9. Dicho accidente se produjo de este modo: Al llevar Gervasio Díaz, un adulto, dependiente de tienda, la menor a una tía paterna de ésta que se encontraba de compras en una tienda de la calle Estrella situada al lado derecho de la guagua, cumpliendo aquél con ello una encomienda que le había confiado la codemandante Graciela Ortiz, madre de la menor, Gervasio, por encargo de dicha tía, cruzó la calle con la menor cogida de la mano para comprar a la misma unas galletitas. Realizado tal encargo, Gervasio, con la menor a su derecha cogida de la mano, salió de la tienda correspondiente, cruzó la acera que daba hacia la izquierda de la guagua para seguir cruzando nuevamente la calle Estrella y dejar a la menor con la expresada tía, y al apearse con la menor de la acera a la calle, la guagua, que se acercaba por la expresada izquierda como a tres pies del borde exterior de dicha acera a la velocidad indicada de 15 a 18 millas por hora, estaba como a 12 pies de Gervasio y la menor. Iniciado el cruce de la calle por Gervasio éste se percató de

inmediato de la proximidad de la guagua y se detuvo con la menor a su derecha cogida de la mano, como a dos pies de dicho borde exterior de acera para dar paso a la guagua, cuando el vehículo empezaba a pasar la parte delantera del motor y de la caja frente a Gervasio y la menor, continuaba discurriendo a la velocidad ya dicha y como a tres pies del borde de dicha acera. Pasado que hubo dicha parte del motor y de la caja frente a Gervasio y la menor, ésta de súbito realizó un movimiento de avance hacia el costado izquierda de la guagua dándose con la parte izquierda trasera del vehículo un golpetazo en un muslito que la tumbó al suelo pasándole entonces por encima de la cabeza las ruedas 'guaretas' posteriores de la izquierda de la guagua con el resultado mencionado en la anterior conclusión de hecho.

"10. A pesar de que el accidente tuvo lugar un sábado en una calle residencial y comercial, al ocurrir el mismo y momentos antes de esto la calle indicada estaba completamente expedita y despejada de personas, vehículos y animales y obstrucciones de toda clase en lo que al frente de dicha guagua concernía.

"11. No hubo necesidad ni justificación alguna para que dicha guagua fuera conducida por el lado izquierdo de dicha calle Estrella en ninguno de los momentos reseñados.

"12. En los instantes en que Gervasio Díaz cruzaba la expresada acera con la menor, ésta no fué vista, ni tampoco lo fué Gervasio, por Simón Cordero, chófer que conducía dicha guagua, pero ambos estaban en tales instantes dentro de la visibilidad periférica o lateral de dicho chófer, a pesar de los defectos del vehículo señalados en las conclusiones de hecho números 5, 6 y 7 precedentes.

"13. En los instantes en que Gervasio Díaz bajó de dicha acera a la calle con la menor y justamente se detuvo con ésta al percatarse de la proximidad de la guagua, la menor no podía ser vista, ni podía serlo Gervasio, por dicho chófer, por no estar ninguno de ambos en tales instantes dentro de la visibilidad periférica o lateral de éste con motivo de los expresados defectos del vehículo, pero de no haber existido dichos defectos tanto Gervasio como la menor hubieran estado en tales instantes dentro de dicha visibilidad.

"14. La menor Ivette Socorro Colón Ortiz vivió siempre en compañía de su madre la codemandante Graciela Ortiz y era hija legítima de ésta y su esposo el codemandante Pedro Colón.

"15. Los actores son los únicos y universales herederos de la menor.

"16. Aunque al fallecer la menor y desde que la codemandante Graciela Ortiz estaba embarazada de ésta los actores estaban separados, el codemandante Pedro Colón sostenía relaciones con la menor, la visitaba y atendía los alimentos de la misma.

"17. Al ocurrir dicho accidente estaba vigente la responsabilidad de la codemandada The Imperial Guarantee & Accident Co. of Canada, a virtud de póliza de seguro al efecto de los daños y perjuicios que ocasionara dicho vehículo a personas y herederos de éstas hasta el límite de $3,000 fueren uno o más los lesionados o muertos en un accidente.

"18. Los actores han sufrido con motivo de la muerte de su expresada hija ocasionada por dicho accidente angustias mentales que, tomando en consideración todos los factores de valoración concurrentes, ascienden por vía de daños y perjuicios a la suma de $10,000."

Las demandadas alegan en apelación que "No hay controversia alguna sobre los hechos en este caso. Las apelantes aceptan como correctas las conclusiones de hecho formuladas por el juez sentenciador, razón que explica por qué no se ha elevado la transcripción de evidencia. Sostienen no obstante, que los hechos así declarados probados revelan, como cuestión de derecho, que la sentencia aquí dictada es errónea e injusta." Y aducen dos motivos por los cuales, a su juicio, debe revocarse la sentencia apelada. Textualmente copiados éstos rezan así:

*"Primer Error.*

"Tomando como ciertos los hechos que declaró probados la corte inferior, erró dicha corte al sostener que tales hechos constituyen negligencia accionable: es decir, erró al concluir que tales hechos constituyeron la causa próxima del accidente sufrido por la hija de los demandantes."

*"Segundo Error.*

"Aceptando como ciertos los hechos establecidos por el juez sentenciador, erró dicho magistrado en su conclusión de derecho al efecto de que el custodio de la hija de los demandantes no

incurrió en negligencia y falta de cuidado. Tal negligencia y falta de cuidado son imputables a los demandantes y les impide recobrar."

Los apelados han insistido enfáticamente, sin embargo, tanto en una moción para desestimar, como en su alegato sobre el caso en sus méritos y en su informe oral durante la vista, en que los errores así planteados no pueden ser considerados por nosotros, toda vez que las apelantes no han elevado la transcripción de evidencia. Les asiste la razón. Innumerables son los casos en que este Tribunal ha resuelto que los hechos declarados como ciertos en la opinión del tribunal sentenciador no pueden substituir la transcripción de evidencia, ni el pliego de excepciones y la exposición del caso, cuando los errores planteados se dirigen al peso o eficacia de la prueba.

En *Torres* v. *Sancho Bonet, Tes.*, 51 D.P.R. 17, 20, refiriéndonos a una cuestión similar a la aquí envuelta, dijimos:

"Al discutir el primer error los apelados sostienen que no hay base para considerarlo porque la transcripción elevada por el apelante no contiene la de las pruebas. Y así es en efecto. *No importa que dichas pruebas se expongan y analicen por el juez en su opinión. La opinión de la corte no es el medio autorizado por la ley para elevar la evidencia practicada en un juicio a la corte de apelación. No cabe equipararla a un pliego de excepciones, a una relación de pruebas, a una exposición del caso o a una transcripción de evidencia.*" (Bastardillas nuestras.)

En *Guerra* v. *Acha*, 27 D.P.R. 688, tampoco se elevó la exposición del caso, mas tomando como ciertos los hechos declarados probados por el juez sentenciador en su opinión, los apelantes sostenían que la sentencia debía ser revocada. Este Tribunal se expresó así:

"En vista de lo expuesto surge la cuestión de si a pesar de no existir una exposición del caso podemos resolver esta apelación tomando por base, como han hecho los apelantes, los hechos declarados probados por el juez sentenciador para considerar y decidir si la ley fué correctamente aplicada.

*"Esta cuestión no es nueva en este tribunal* pues en el caso de *Rubio* v. *Charvounier,* 20 D.P.R. 315, después de haber resuelto que no podíamos tomar en consideración la exposición del caso que se había presentado por estar firmada únicamente por el abogado de la parte apelante, careciendo de la aprobación del juez, consideramos la cuestión de si podíamos resolver el recurso teniendo en cuenta las conclusiones de hecho consignadas en la opinión de la corte inferior y con tal motivo dijimos lo siguiente:

'. . . *La corte sentenciadora se limita a consignar en la relación de hechos la apreciación particular que le merece el resultado de las pruebas y como esa apreciación puede ser equivocada o deficiente, no puede tomarse como base para llegar a la revocación solicitada.'"* (Bastardillas nuestras.)

Además, en *Sucesión Orrach* v. *Sucn. Polanco,* 17 D.P.R. 724, copiando del sumario, nos expresamos del siguiente modo:

*"La omisión de una exposición de hechos no puede ser suplida por los hechos consignados en la opinión del tribunal sentenciador, pues no consta que esos hechos sean todos los que resultaron del juicio, . . ."* (Bastardillas nuestras.)

Véanse, además, *Torres* v. *Vidal,* 28 D.P.R. 421; *Albite* v. *Lecumberri,* 22 D.P.R. 856; *Rubio* v. *Charvounier,* supra; *Marrero* v. *López,* 15 D.P.R. 766; cf. *Municipio* v. *Comisión Servicio Público,* 53 D.P.R. 276, 289.

■■ Los casos arriba citados fueron resueltos antes de empezar a regir las Reglas de Enjuiciamiento Civil.[2] Ello, sin embargo, no altera en forma alguna la situación. De acuerdo con lo provisto por el artículo 227 del Código de Enjuiciamiento Civil, según fué enmendado por la Ley núm. 25 de 12 de junio de 1925 (pág. 179):

"En el juicio definitivo de cualquier caso en una corte de distrito, *el juez de la misma, deberá hacer y archivar al mismo tiempo que dicte su sentencia, una opinión escrita, que se unirá a aquélla, en la que expondrá separadamente y de una manera breve, los hechos que considere probados y las razones jurídicas*

---

[2] Primero de septiembre de 1943. Véase la Regla 86.

*en que funde su decisión.* Cuando las resultancias de hecho se basaren en un conflicto de la evidencia, el juez expondrá los motivos que haya tenido para dirimir el conflicto en la forma en que lo hiciere; *y en caso de apelación, el Tribunal Supremo deberá analizar dicha evidencia y determinar si las resultancias estuvieron justificadas o no."* (Bastardillas nuestras.)

Refiriéndose a ese artículo después de la referida enmienda y luego de citar con amplitud del caso de *Paganacci v. Lebrón,* 24 D.P.R. 796, este Tribunal, en *Conde v. Garratón Vda. de Barnés,* 40 D.P.R. 323, 329, se expresó así:

"Debe la corte a virtud de la enmienda emitir una opinión, debe exponer en ella los hechos que considera probados y las razones jurídicas en que funde su decisión y debe expresar los motivos que tenga para dirimir el conflicto en casos de evidencia contradictoria, *pero nada de ello autoriza a concluir que a virtud de la enmienda la opinión sustituya la evidencia practicada y sea considerada como la única prueba en el litigio. Además de la opinión siguen teniendo existencia legal y eficacia en Puerto Rico los pliegos de excepciones, las exposiciones del caso y transcripciones de evidencia en que descansan las sentencias que se apelan. . ."* (Bastardillas nuestras.)

La Regla 52 (*a*) de las de Enjuiciamiento Civil, (³) aunque no es idéntica al artículo 227, según el mismo existía originalmente o según fué enmendado, es muy similar a éste en tanto en cuanto requiere que el juez sentenciador haga una relación de los hechos que considere probados. Empero, cualquier discrepancia que pueda existir en el contexto de la Re-

---

(³) La Regla 52 (*a*) provee:

"En todos los casos la corte expondrá los hechos que estime probados y separadamente consignará sus conclusiones de derecho y ordenará que se anote la sentencia correspondiente; y al conceder o denegar injunctions interlocutorios, la corte, de igual modo, consignará las conclusiones de hecho y de derecho que constituyan los fundamentos de su resolución. No será necesario solicitar que se consignen conclusiones de hecho y de derecho a los efectos de una revisión. Las conclusiones de hecho basadas en testimonio oral no se dejarán sin efecto a menos que sean claramente erróneas y se tomará en cuenta la oportunidad de la corte sentenciadora para juzgar de la credibilidad de los testigos. Las conclusiones de un *master* en tanto en cuanto la corte las adopte, serán consideradas como conclusiones del tribunal."

gla 52 (a) y el artículo 227, según está concebido al presente y según rezaba en el pasado, no afecta en manera alguna la conclusión a que aquí llegamos. Las Reglas de Enjuiciamiento Civil, aplicables a acciones civiles ordinarias como la aquí envuelta, guardan silencio absoluto sobre el procedimiento que una parte no conforme con la sentencia ha de seguir en apelación. En ellas, bajo el epígrafe "apelaciones" se hace constar de la manera más terminante y paladina que "no hay Reglas 72 a 76, inclusives". Esto significa, a nuestro juicio, que la aplicación, alcance y efecto de las Reglas de Enjuiciamiento Civil terminan con la sentencia, o con la resolución que se dicte al solicitarse un nuevo juicio. Véanse *Hernández* v. *Corte Municipal*, 69 D.P.R. 887, 890; *Vigio* v. *Cartagena*, 70 D.P.R. 596, 598; *Collazo* v. *Puig & Abraham*, 70 D.P.R. 817, 819; *Rodríguez* v. *Fonalledas*, 71 D.P.R. 836, 838. No habiéndose alterado en forma alguna por las citadas Reglas el procedimiento a ser seguido por un apelante para perfeccionar su recurso de apelación, cuanto este Tribunal ha resuelto en los casos a que hacemos mención más arriba es de estricta aplicación en la actualidad.

Indudablemente, hay casos en que por no referirse los errores señalados a la prueba aportada y por plantearse en ellos tan sólo cuestiones de derecho que surgen del legajo de sentencia, se hace innecesario elevar la transcripción de evidencia. *West India Oil Co.* (*P. R.*) v. *De Castro*, 52 D.P.R. 521. Empero, no es ésa la situación en el presente caso. Los dos errores señalados por las apelantes y toda la discusión que de los mismos hacen en su alegato se dirigen al efecto legal de la prueba creída por el tribunal. Para considerarlos sería menester tener a la vista la prueba ofrecida. Ésta, repetimos, no se ha traído.

*Debe confirmarse la sentencia apelada.*

El Juez Presidente Señor Todd, Jr., no intervino.